Opinion issued May 2, 2017



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00977-CR

_____

## ERIK CATORCE MADRID, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1970160**

---

## MEMORANDUM OPINION

Erik Catorce Madrid was charged and found guilty of driving while intoxicated with a breath alcohol concentration above 0.15. The trial court sentenced him to one year in county jail, probated for 18 months. In seven issues, Madrid contends that the trial court's judgment should be reversed because the trial court

erred by (1) denying a challenge for cause, (2) denying his motions to suppress his arrest and breath test results, (3) admitting results of the horizontal gaze nystagmus test, (4) denying his requests for an article 38.23 instruction and a spoliation instruction in the jury charge, and (5) submitting as a special issue the question of whether his alcohol concentration exceeded 0.15. We affirm.

## Background

At trial, Officer R. Carter of the Houston Police Department ("HPD") testified that he encountered Madrid driving his truck on the highway while en route to HPD's central intoxication facility ("central intox") with another person Carter had just arrested for driving while intoxicated. Carter followed Madrid's truck in the highway's left lane and pulled Madrid over after pacing him and determining he was speeding. Carter also observed Madrid tailgating other drivers, forcing them to move out of the left lane.

When Carter approached Madrid's truck, he noticed a strong odor of alcohol and saw that Madrid's eyes were red and glassy. Carter asked Madrid whether he had been drinking, and Madrid admitted to drinking five or six beers between 6:00 p.m. and midnight. Carter asked Madrid to step out of the truck and performed a horizontal gaze nystagmus (HGN) test. Madrid exhibited six of the six possible clues, indicating intoxication, so Carter arrested him for driving while intoxicated.

2

Madrid's driving and the traffic stop were recorded on Carter's dashboard camera, and the dash-cam video was admitted into evidence and played for the jury.

While Carter testified, Madrid moved to suppress his arrest on the grounds that Carter did not have reasonable suspicion to stop him or probable cause to arrest him for driving while intoxicated.[1] With respect to probable cause, Madrid argued that speeding is not an arrestable offense, admission of drinking alone does not support a conclusion that a person is intoxicated, and Carter performed the HGN test incorrectly because "there was flashing lights." The State responded that Carter had probable cause because he smelled alcohol on Madrid's breath and observed his red, glassy eyes, Madrid admitted to drinking five to six beers, and Madrid exhibited six of the six possible clues during the HGN test, indicating intoxication. The trial court denied the motion.

Later in the trial, defense counsel cross-examined Carter about the manner in which he conducted the HGN test. Carter conducted the test with Madrid facing the side of the road and standing between Carter's patrol car and Madrid's truck, which had its hazard lights flashing. Carter denied that this violated the National Highway Traffic Safety Administration's guidelines regarding how to conduct an HGN test, and he testified that, at most, it would be a slight variation that would not invalidate

---

[1] On appeal, Madrid attacks only whether Carter had probable cause to arrest him. Our background discussion therefore focuses on Madrid's probable-cause argument.

the test. Madrid did not reurge his motion to suppress his arrest after this testimony was adduced.

Carter testified that, after the arrest, he brought Madrid to central intox for further tests. Carter put Madrid in a holding cell and conducted a breath test on the first person he had arrested. The last of those tests ended at 2:01 a.m. according to the Intoxilyzer. Carter then retrieved Madrid and brought him to the intox room.

Carter could not recall how long they were in the intox room before a technician turned on a video recording device. The video was played for the jury and shows a recording of the statutory warnings for breath sample requests being played for Madrid while he reads a copy of the warnings, Carter requesting a breath sample from Madrid, and Madrid consenting to the breath test. After Carter testified, Madrid moved to suppress the breath test results, arguing that if Carter observed the 15-minute observation period required by section 19.3(a)(1) of the Texas Administrative Code after the 10 1/2 minute intox room video ended, it would have been impossible for Carter to conduct a 15-minute observation in the 25-minute period between the end of the other person's breath test at 2:01 and the beginning of Madrid's breath test at 2:26 a.m. The trial court denied the motion.

Carly Bishop, a technical supervisor with the Texas Department of Public Safety Breath Alcohol Testing Program testified about Madrid's breath test results.

They showed that Madrid's breath contained 0.155 and 0.151 grams of alcohol per 210 liters of breath.

The jury found Madrid guilty, and the trial court sentenced him to one year in county jail, probated for 18 months. Madrid appeals.

**Challenge for Cause**

In his first issue, Madrid argues that the trial court erred by denying his challenge for cause to venire member number 14. Madrid argues that number 14 expressed incurable bias in favor of police officers during voir dire.

**A.   Standard of Review and Applicable Law**

A prospective juror is subject to challenge for bias under the Code of Criminal Procedure, but that challenge may be waived. *See* TEX. CODE CRIM. PROC. art. 35.16, §§ 9, 11. Further, while the United States and Texas Constitutions provide a constitutional right to an impartial jury, that right may also be waived. *See State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008) (holding that the Sixth Amendment right to an impartial jury may be waived); *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998) (holding that the Texas constitutional right to an impartial jury affords no greater protection than that provided by the Sixth Amendment).

To preserve error with respect to a trial court's denial of a challenge for cause, an appellant must: (1) assert a clear and specific challenge for cause; (2) use a

5

peremptory strike on the complained-of venire member; (3) exhaust his peremptory strikes; (4) request additional peremptory strikes; (5) identify an objectionable juror; and (6) claim that he would have struck the objectionable juror with a peremptory strike if he had one to use. *Allen v. State*, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003).

We review a trial court's decision to deny a challenge for cause by looking at the entire record to determine whether sufficient evidence supports the ruling. *Davis v. State*, 329 S.W.3d. 798, 807 (Tex. Crim. App. 2010) (citing *Feldman v. State*, 71 S.W.3d. 738, 744 (Tex. Crim. App. 2002)). "The test is whether a bias or prejudice would substantially impair the venire member's ability to carry out the juror's oath and judicial instructions in accordance with the law." *Id.* (citing *Gardner v. State*, 306 S.W.3d. 274, 295 (Tex. Crim. App. 2009)). In applying this test, we must afford considerable deference to the trial court's ruling because the trial judge is in the best position to evaluate a panel member's demeanor and responses. *Id.* A trial court's ruling on a challenge for cause may be reversed only for a clear abuse of discretion. *Id.* (citing *Gardner*, 306 S.W.3d. at 296). "When a venire member's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision." *Id.* (citing *Gardner*, 306 S.W.3d. at 296).

A panelist is challengeable "if he cannot impartially judge the credibility of witnesses," but "this means only that jurors must be open-minded and persuadable,

6

with no extreme or absolute positions regarding the credibility of any witness." *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999). Because "'complete impartiality cannot be realized as long as human beings are called upon to be jurors,'" panelists "are not challengeable for cause simply because they would give certain classes of witnesses a slight edge in terms of credibility." *Id.* (quoting *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998). "The test is whether a bias or prejudice would substantially impair the venire member's ability to carry out the juror's oath and judicial instructions in accordance with the law." *Davis*, 329 S.W.3d at 807. "Before venire members may be excused for cause, the law must be explained to them, and they must be asked whether they can follow that law, regardless of their personal views." *Id.* The party seeking to have the panelist struck does not meet his burden of establishing that the challenge is proper "until he has shown that the venire member understood the requirements of the law and could not overcome his or her prejudice well enough to follow the law." *Id.* (burden of establishing that a challenge is proper rests with its proponent); *see Castillo v. State*, 913 S.W.2d. 529, 534 (Tex. Crim. App. 1995) (citing *Hernandez v. State*, 757 S.W.2d. 744, 753 (Tex. Crim. App. 1988)).

**B.    Analysis**

Madrid challenged venire member number 14 for cause, and the trial court denied the challenge. Madrid then exercised a peremptory challenge on venire

member number 14, exhausted all of his peremptory challenges, requested and was denied additional peremptory challenges, and identified venire member number 7, who was seated on the jury, as an objectionable juror who he otherwise would have struck had he not had to use a peremptory challenge on number 14.

During voir dire, Madrid asked the venire members whether they were going to give a witness who was a police officer more credibility or a "head start" simply because the witness was a police officer. Number 14 responded, "Yes." Number 14 was later called up to the bench to clarify his answer:

> Defense counsel: When I asked the question about—I explained that all witnesses are to start off even before you heard the testimony. I asked if you would give a police officer or give a witness who is a police officer a head start, basically more credibility before you've heard the testimony.

> Number 14: You asked me to be honest. I have family members that are law enforcement. So I hold them in high regard. So just naturally I view them as someone say a little bit more authority than just someone I don't know. That's the only thing I meant.

> Defense counsel: There is nothing wrong with that. I just wanted to clarify because our law said that they have to start even, and if you're going to give a police officer a head start, basically more credibility, before you've heard the testimony. Once you hear it, of course, you can believe it, but before you've heard it.

> Number 14: I'd give a head start and credibility, two different words.

> Defense counsel: Well, if you're going to give them more credibility before you've heard the testimony simply because they are a police officer, that's what we want to know.

> The Court: All right. State wanted a challenge?

8

Prosecutor: And it's okay to hold them to a higher regard. It's okay to do that, but in this case, according to the law, you're not supposed to judge whether or not you believe a person who testifies irregardless if they're a police officer, a defendant, whoever until they take the stand and give their testimony. Once you hear the testimony, then you can judge whether or not you believe that testimony or whether you don't believe it. We're asking if you can wait and hold your judgment until you hear the evidence presented in the case, or are you going to automatically?

Number 14: Would I be able to uphold the oath of a true verdict, absolutely. Would I also view a police officer in higher regard, absolutely. I do think those used exclusively.

The Court: You do think.

Number 14: I do think they are used exclusively.

The Court: Absolutely. Have a seat. Denied, if that was your motion.

Defense counsel: Well, Your Honor, the defense then with [sic] ask for additional peremptory because he did say he was going to give them more credibility before he heard the testimony, and therefore would ask for an additional peremptory because we are going to have to use peremptory challenge.

The Court: He we was very clear. I'm not going to argue. Your request is denied.

Defense counsel: Yes, Your honor.

Although number 14 initially responded, "Yes," to defense counsel's question about police credibility, at the bench, number 14 clarified that he holds police officers in "high regard" but unequivocally stated, after the law regarding witness credibility was explained, that he could "absolutely" uphold the oath of a true verdict. The trial court was in a position to evaluate number 14's responses and was entitled to believe that he could follow the law. *See Feldman v. State*, 71 S.W.3d

9

738, 747 (Tex. Crim. App. 2002) (where venire member initially stated would answer special issue a particular way, but after further questioning, said that he could follow the law, trial court did not abuse discretion in denying challenge for cause); *see also Davis*, 329 S.W.3d at 807 (to the extent venire member's answers are "vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision"). Accordingly, we hold that the trial court did not abuse its discretion in denying Madrid's challenge for cause. *See Feldman*, 71 S.W.3d at 747; *Ladd*, 3 S.W.3d at 559; *see also Davis*, 329 S.W.3d at 807.

We overrule Madrid's first issue.

### Motions to Suppress

In his second issue, Madrid argues that the trial court erred by denying his motion to suppress his arrest because Carter lacked probable cause to believe Madrid was intoxicated. In his fourth issue, Madrid argues that the trial court erred by denying his motion to suppress the breath test results because Carter failed to continuously monitor Madrid for 15 minutes before conducting the test as required by section 19.3(a)(1) of the Texas Administrative Code.

### A. Standard of Review

In reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Wiley v. State*, 388 S.W.3d 807, 815 (Tex. App.—Houston [1st

Dist.] 2012, pet. ref'd). We give almost total deference to the trial court's determination of historical facts that depend on credibility, and we conduct a de novo review of the trial court's application of the law to those facts. *Carmouche*, 10 S.W.3d at 327.

When a trial court does not make explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling. *Id.* at 327–28. That is, "we will assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion." *Id.* at 328. When reviewing a ruling on a motion to suppress, we defer to the trial court's resolution of contradictory evidence and determinations regarding witness credibility. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996).

## B. Arrest

In his second issue, Madrid argues that the trial court erred by denying his motion to suppress his arrest because Carter lacked probable cause to believe Madrid was intoxicated.

11

### 1. Applicable Law

The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." U.S. CONST. amend. IV; *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Under the Fourth Amendment, a warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause. *Amador*, 275 S.W.3d at 878. Probable cause for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. *Id.* A finding of probable cause requires "more than bare suspicion" but less than would justify conviction. *Id.* The test for probable cause is objective, "unrelated to the subjective beliefs of the arresting officer," and "it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.*

An officer may lawfully stop and detain a person for a traffic violation. *Chapnick v. State*, 25 S.W.3d 875, 877 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). An officer may not then arrest the defendant for driving while intoxicated unless the officer observes additional facts constituting probable cause. *See id.*

## 2.    Analysis

Madrid argues that the trial court erred by denying his motion to suppress his arrest because the evidence is insufficient to support a finding of probable cause.[2] Specifically, Madrid argues that:

- Carter's testimony that he was speeding and driving aggressively was not credible and was contradicted by the dash-cam video;

- Odor of alcohol and admission of alcohol use, alone, do not establish intoxication;

- He was not stumbling or slurring his words, did not have problems walking, standing, or talking, and was able to comply with all of Carter's directions; and

- Carter improperly administered the HGN test.

The State argues that the trial court could have credited Carter's testimony regarding Madrid's behavior and the results of the HGN test to find that Carter had probable cause to arrest Madrid for driving while intoxicated.

We conclude that the trial court did not err by denying Madrid's motion to suppress his arrest. Carter testified that he observed Madrid speeding and tailgating, and the trial court was able to observe whether Madrid's driving was as Carter described in the dash cam video. Carter also testified that when he approached Madrid's car, Madrid smelled of alcohol and his eyes were red and glassy. Madrid

---

[2]    Madrid does not contend on appeal that Carter lacked reasonable suspicion to make the initial traffic stop and only challenges whether Carter had probable cause to subsequently arrest him.

admitted to drinking five or six beers, the last around midnight, which was less than an hour before Carter stopped him. Carter further testified that he properly administered the HGN test and the results indicated intoxication. This evidence supports the trial court's conclusion that Carter had probable cause to arrest Madrid.

Madrid argues that Carter's testimony about Madrid's speeding and reckless driving was not credible and is not supported by the dash cam video, and that the evidence that Madrid was able to talk, stand, walk, and follow Carter's directions without issue conflict with Carter's testimony. However, we must defer to the trial court's resolution of conflicts in the evidence and credibility determinations. *See Gutierrez*, 221 S.W.3d at 687; *St. George*, 237 S.W.3d at 725; *Green*, 934 S.W.2d at 99. Accordingly, this is a not a basis for concluding that the trial court's implied finding of probable cause was unsupported.

Madrid also argues that odor of alcohol and admission of alcohol use, alone, do not support a conclusion that a person is intoxicated. But this is not the only evidence on which the trial court could have relied to conclude that Carter had probable cause to believe Madrid was intoxicated.

Finally, Madrid contends that Carter improperly administered the HGN test, and therefore the trial court could not rely upon its result in making the probable-cause determination. Madrid argues that the test was improperly performed because it was administered near Madrid's flashing hazard lights. However, all of the

14

evidence that Madrid relies upon to support this argument was adduced after Madrid raised his motion to suppress his arrest and the trial court denied it. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (holding appellate court reviews trial court's ruling on admissibility of evidence "in light of what was before the trial court at the time the ruling was made"); *Gutierrez*, 221 S.W.3d at 687 (appellate court considers additional trial evidence only if motion to suppress is relitigated at trial). Madrid did not ask the trial court to reconsider its ruling on the motion to suppress based upon the evidence upon which he now relies on appeal. *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012) (ruling on motion to suppress is interlocutory, and trial court may reconsider its ruling at any time before end of trial). [3]

Viewing the evidence in the light most favorable to the trial court's ruling and deferring to the trial court's resolution of contradictory evidence and determinations regarding witness credibility, we hold that the trial court did not abuse its discretion

---

[3]    In his third issue, Madrid separately argues that the trial court erred by admitting evidence of the HGN test results. However, at trial, Madrid argued only that the HGN test results did not support the probable-cause finding, and did not object to the admission of the HGN test results themselves. Because Madrid did not object and obtain a ruling on the admission of the HGN test results, he has not preserved this issue for our review. *See* TEX. R. APP. P. 33.1(a) (to preserve the issue of erroneously admitted evidence, a party must make a timely and specific objection and obtain a ruling from the trial court); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (appellate court may not determine whether a trial court erred by admitting evidence unless error is preserved for review). We therefore overrule Madrid's third issue.

in denying Madrid's motion to suppress his arrest. *See Carmouche*, 10 S.W.3d at 327.

We overrule Madrid's second issue.

**C.  Breath Test Results**

In his fourth issue, Madrid argues that the trial court erred by denying his motion to suppress the breath test results because the evidence established that Carter failed to observe Madrid for 15 minutes before conducting the breath test as required by section 19.3(a)(1) of the Texas Administrative Code.

**1.  Applicable Law**

"A breath specimen taken at the request or order of a peace officer must be taken and analyzed under the rules of the department [of public safety] . . . ." TEX. TRANSP. CODE § 724.016(a). The rules for breath-alcohol-testing procedures are set forth in the Texas Administrative Code. *See* 37 TEX. ADMIN. CODE § 19.3. A presumption of admissibility applies when the procedures prescribed by the Department of Public Safety are followed. *See Reynolds v. State*, 204 S.W.3d 386, 389 (Tex. Crim. App. 2006); *Serrano v. State*, 464 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

Here, Madrid contends that the State did not comply with one such rule, which imposes a 15-minute waiting and observation period before a breath alcohol test. The rule requires:

(1) An operator shall remain in the continuous presence of the subject at least 15 minutes immediately before the test and should exercise reasonable care to ensure that the subject does not place any substances in the mouth. Direct observation is not necessary to ensure the accuracy of the test result . . . .

37 TEX. ADMIN. CODE § 19.3(a)(1).

### 2. Analysis

Madrid argues that the trial court erred by overruling his motion to suppress the breath test results because Carter's testimony about his 15-minute observation of Madrid was inconsistent and therefore not credible. Specifically, Madrid contends that Carter's testimony conflicted in three respects:

- Whether Carter started the observation period before Madrid entered the intox room or after Madrid consented to the breath test;

- Whether the video recording was started when Carter and Madrid first entered the room or after they had been in the room some time; and

- The reason Carter had the technician turn off the video before the 15 minutes had elapsed.

Madrid also argues that Carter's testimony was not credible because he testified that he used a timer on his watch to monitor the 15-minute period, but the intox room video shows he is not wearing a watch. The State responds that Carter unequivocally

17

and repeatedly testified that he observed Madrid for the required 15 minutes, and therefore the trial court did not err in denying the motion.[4]

At trial, Carter was asked what happened after Madrid consented to the breath test, and he responded, "Before every breath test you have to do a 15-minute observation period." Carter testified that he timed the statutorily-required 15-minute period that must be observed before he administered a breath test to Madrid. On cross-examination, defense counsel questioned why Carter did not record the entire 15-minute period. Carter testified that there are only two intox rooms at central intox, it was a busy weekend, and it is uncommon to tape the entire 15-minute period because others need to use the video recorder to record sobriety tests. Carter was also questioned about when he started timing the 15-minute period:

> Defense counsel: So, did you look at your watch?
>
> Carter: Yeah, I got a timer. The same watch I used that night. I had my timer to 15 minutes.

---

[4] The State also argues that Madrid did not preserve his complaint that the breath test results should not be admitted because defense counsel stated "no objection" when the breath test results were offered. However, the record reflects that when the State was publishing the results to the jury, defense counsel clarified that she made no objection subject to the trial court's previous denial of the motion to suppress the breath test results, and the trial court acknowledged that the breath test results were being admitted subject to the denial of Madrid's motion to suppress them. *See Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013) (rule that later statement of "no objection" will forfeit earlier-preserved claim of error in denial of motion to suppress is context-dependent; if record as a whole plainly demonstrates that defendant did not intend, and trial court did not construe, his "no objection" statement to constitute abandonment of earlier-preserved claim of error, then appellate court should not regard claim as waived but should resolve it on merits).

18

Defense counsel: So you hit your timer when y'all came into the room?

Carter: I'm not quite sure when I hit it, but I know I did the 15.

Later, Carter testified that he started the timer before they went into the intox room:

Defense counsel: And you don't know what time your 15-minute observation period started?

Carter: Before we went in the room.

According to the reading from Madrid's breath test, his test began at 2:26 a.m., 25 minutes after Carter completed the breath test on his first arrestee. Madrid moved to suppress the breath test results, arguing that if Carter observed the 15-minute observation period required by section 19.3(a)(1) of the Texas Administrative Code after the 10 1/2 minute intox room video ended, it would have been impossible for Carter to conduct a 15-minute observation in the 25-minute period between the end of the other person's breath test at 2:01 and the beginning of Madrid's breath test at 2:26 a.m. The State responded that Carter testified that he started timing the 15-minute period before he and Madrid entered the intox room, and that there was "plenty of time" in the 25-minute period between the first person's breath test and Madrid's breath test, less the 10 1/2 recorded minutes, to allow for the additional 4 1/2 minutes of the 15-minute observation period that were not captured on video.

We conclude that the trial court did not err in denying Madrid's motion to suppress the breath test results. Carter unequivocally testified that he knew he complied with the 15-minute observation period because he timed it. Madrid's

19

arguments on appeal about alleged internal inconsistencies in Carter's testimony pertain to the timeline regarding when the 15-minute period began and ended and why Carter did not record the entire 15-minute period. To the extent that Carter's testimony conflicted with respect to these issues, it was the trial court's province to resolve these conflicts, and we afford almost total deference to the trial court's resolution of such conflicts. *See Gutierrez*, 221 S.W.3d at 687; *see also Walker v. State*, 588 S.W.2d 920, 924 (Tex. Crim. App. 1979) (trial court determines whether officer's or appellant's version of events is true). To the extent that Madrid is arguing that Carter's inconsistent testimony raises questions about his credibility, the trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony," *see St. George*, 237 S.W.3d at 725, it could choose to believe or disbelieve any part of Carter's testimony, *see Green*, 934 S.W.2d at 98, and we are required to defer to this resolution. *See Gutierrez*, 221 S.W.3d at 687.

Madrid's claim that the trial court should not credit Carter because he falsely claimed to have been wearing a watch was not raised in the trial court. We may not reverse the trial court's ruling on the motion to suppress based on an argument that the trial court did not have an opportunity to consider. *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002); s*ee* Tex. R. App. P. 33.1(a) (to preserve issue for appellate review, party must present to trial court a timely request, objection, or

20

motion stating with sufficient specificity the ground for the ruling desired); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015) (timely, specific objection is required so opposing counsel has an opportunity to respond and trial judge is informed of basis of objection and has opportunity to rule). Because Madrid did not raise this argument in the trial court, he did not preserve this argument for appeal.

Giving the required deference to the trial court's resolution of any conflicting evidence and determinations regarding Carter's credibility in light of the arguments Madrid preserved for appeal, we conclude that the trial court could have credited Carter's testimony that he observed the mandatory 15-minute observation period. *See, e.g.*, *Serrano*, 464 S.W.3d at 8 (holding trial court did not abuse its discretion in denying motion to suppress where breath test operator testified that she knew she performed mandatory 15–minute waiting period). Accordingly, we hold that the trial court did not abuse its discretion by denying Madrid's motion to suppress the breath test results.

We overrule Madrid's fourth issue.

### Jury Charge

In his fifth issue, Madrid contends that the trial court erred by failing to submit an article 38.23 instruction because the evidence raised a fact issue about whether Carter properly conducted the 15-minute observation period required by Texas Administrative Code section 19.3(a)(1). In his sixth issue, Madrid argues that the

21

trial court erred by denying his request for a spoliation instruction because the video recorder in the intox room was shut off before he started his breath test, contrary to HPD's General Order for DWI Investigations. In his seventh issue, Madrid argues that the trial court erred by submitting a special issue regarding whether his breath alcohol concentration exceeded 0.15 instead of including it in the application paragraph.

## A.   Standard of Review

We review a claim of jury-charge error using the standard set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). First, we determine whether error exists in the jury charge. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). Second, if error exists, we determine whether sufficient harm was caused by that error to require reversal. *Id.* Under *Almanza*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm," which requires the defendant to show that as a result of the error, he "has not had a fair and impartial trial." *Almanza*, 686 S.W.2d at 171. We review a trial court's decision not to submit an instruction in the jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).

**B.    Article 38.23 Instruction**

**1.    Applicable Law**

A defendant's right to the submission of jury instructions under article 38.23 of the Texas Code of Criminal Procedure is "limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). Before a defendant is entitled to the submission of a jury instruction under article 38.23, (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510.

Under the first requirement, there must be a genuine dispute about a material issue of fact before an article 38.23 instruction is warranted; if there is no disputed fact issue, the legality of the conduct is determined by the court alone, as a matter of law. *Id.* In order for there to be a conflict in the evidence that raises a disputed fact issue, there must be some affirmative evidence in the record that puts the existence of that fact in question. *Id.* at 513. Furthermore, if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence and is not to be

submitted to the jury. *Id.* at 511. The disputed fact issue must be essential to deciding the lawfulness of the challenged conduct. *Id.*

### 2. Analysis

Madrid argues that article 38.23's first requirement is met because the evidence raised a fact question about whether Carter observed the 15-minute observation period required by Texas Administrative Code section 19.3(a)(1). In support, he relies on the same evidence that he relied upon in his appellate argument regarding his motion to suppress the breath test results. Most of that evidence does not contradict Carter's testimony that he knew that he observed Madrid for the required 15 minutes because he timed it. For the first time on appeal, Madrid also argues that there is a conflict in the evidence because Carter testified that he used his watch to time the 15-minute period and the intox room video does not show Carter wearing a watch. But Madrid did not make this argument in the trial court.

We conclude that Madrid failed to adduce evidence controverting Carter's testimony that he complied with Texas Administrative Code section 19.3(a)(1) and that Madrid was therefore not entitled to the submission of an article 38.23 instruction. Accordingly, we hold that the trial court did not abuse its discretion in refusing to submit an article 38.23 jury instruction. *See Serrano*, 464 S.W.3d at 8 (evidence challenging test operator's timeline did not contradict operator's testimony that they timed 15-minute waiting period); *Mbugua v. State*, 312 S.W.3d

24

657, 669 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (no error in jury charge because there was no conflict in evidence raising a disputed fact that would have mandated a 38.23 jury instruction); *Shpikula v. State*, 68 S.W.3d 212, 217 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (jury's right to disbelieve officers' testimony did not create a factual dispute requiring jury instruction under article 38.23).

We overrule Madrid's fifth issue.

## C.    Spoliation

Madrid requested that the trial court give the jury the following spoliation instruction:

> In this case Officer Carter failed to record the entire encounter with defendant, Erik Madrid, while in the Central Intox room at 61 Riesner, including the entire 15-minute observation period, before conducting a breath test, in violation of Houston Police Department's policies and procedures.

> If you find that Officer Carter knew or reasonably should have known that such portions of the encounter not recorded included evidence relevant to the issues in this case and [its] non-preservation has not been satisfactorily explained, then you are instructed that you may consider such evidence would have been favorable to the defendant.

The State argues that the trial court properly denied the request because the instruction was patterned on a civil spoliation instruction, which is not applicable in a criminal case. The State further argues that spoliation in a criminal case requires a finding that the State lost or destroyed evidence in bad faith, which is lacking here.

25

### 1. Applicable Law

Spoliation concerns the loss or destruction of evidence. *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). In the criminal context, when spoliation concerns potentially useful evidence, the defendant bears the burden of establishing that the State lost or destroyed the evidence in bad faith. *See Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010); *Castilla v. State*, 374 S.W.3d 537, 541 (Tex. App.—San Antonio 2012, pet. ref'd); *Torres*, 371 S.W.3d at 319.

### 2. Analysis

We conclude that the trial court did not err by denying Madrid's request for a spoliation instruction. Madrid adduced no evidence of bad faith. Carter testified that he asked the technician to turn off the camera because there are only two rooms at central intox, it was a busy weekend, and on busy weekends it is common not to tape the entire 15-minute period because others need to use the video recorder. Moreover, Madrid's requested instruction did not properly set out the law on criminal spoliation, which requires a finding that the State lost or destroyed evidence in bad faith. *See Napper*, 322 S.W.3d at 229.

Madrid claims on appeal that turning off the video violated HPD policy. Although defense counsel claimed at trial that turning off the recorder was a violation of the HPD General Order for DWI Investigations, no one testified that

turning off the recorder violates the order, the order was not admitted into evidence, Carter did not agree that turning off the recorder violates the order, and the State contended that turning off the recorder did not violate the order. In short, there is no evidence that turning off the recorder was a bad faith violation of HPD policy.

Accordingly, we hold that the trial court did not abuse its discretion by denying Madrid's request for a spoliation instruction. *See Notias v. State*, 491 S.W.3d 371, 375 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (trial court does not abuse discretion by failing to submit a requested jury instruction that is not in accordance with law); *see also Napper*, 322 S.W.3d at 238 (finding of criminal spoliation requires evidence of State's bad faith).

We overrule Madrid's sixth issue.

## D. Special Issue

In his seventh issue, Madrid argues that the trial court erred by submitting a special issue on whether his breath alcohol concentration was higher than 0.15 instead of merely incorporating the question in the application paragraph of the jury charge.

### 1. Applicable Law

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE § 49.04(a). A person is intoxicated if he does not have the normal use of mental or

27

physical faculties by reason of the introduction of alcohol or other specified substances, *or* has a blood, breath, or urine alcohol concentration of 0.08 or more. TEX. PENAL CODE § 49.01(2). The offense is a Class B misdemeanor. *Id.* § 49.04(b). However, driving while intoxicated is a Class A misdemeanor if the defendant's alcohol concentration is found to have been greater than 0.15 at the time the analysis was performed:

> If it is shown on the trial of an offense under this section that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed, the offense is a Class A misdemeanor.

TEX. PENAL CODE § 49.04(d). Whether a defendant's alcohol concentration was greater than 0.15 at the time of analysis is an element of the Class A misdemeanor offense of driving while intoxicated. *See Navarro v. State*, 469 S.W.3d 687, 696 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (defendant's alleged alcohol concentration was an element of the charged Class A misdemeanor offense of driving while intoxicated with an alcohol concentration of 0.15 or more).

## 2. Analysis

Madrid argues that the trial court erred by submitting a special issue on whether his breath alcohol concentration was higher than 0.15 instead of merely incorporating the question in the application paragraph of the jury charge. He argues that he was harmed because the charge omitted an essential element of the charged offense. The State contends that the trial court may properly have the jury consider

28

an element of an offense as a special issue where, as here, the State must prove all of the elements of a lesser degree of offense before proving a higher degree of offense.

Madrid was charged by information with the Class A misdemeanor offense of driving while intoxicated with a breath alcohol concentration of 0.15 or more at the time of analysis. The parties agree that whether Madrid's breath alcohol concentration was greater than 0.15 was an element of the charged offense in this case. *See Navarro*, 469 S.W.3d at 696.

The charge instructed the jury that a person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. The charge then defined "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, or having an alcohol concentration of 0.08 or more." The application paragraph stated:

> Therefore, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, ERIK CATORCE MADRID, hereafter styled the Defendant, heretofore on or about June 28, 2014, did then and there unlawfully operate a motor vehicle in a public place while intoxicated, then you will find the Defendant guilty.
>
> If you do not so believe, or if you have a reasonable doubt thereof, you will find the Defendant not guilty.

The balance of the charge included general instructions. It was accompanied by a verdict form on which the jury could either find Madrid "'Not Guilty as charged in

the information" or "'Guilty' of driving while intoxicated". At the bottom of the verdict form was the special issue, which instructed the jury:

Special Issue

If the jury finds the defendant Guilty of the offense of Driving While Intoxicated, it will now consider the following Special Issue.

Does the jury find beyond a reasonable doubt based upon the evidence that at the time of the analysis, and at or near the time of the commission of the offense, an analysis of the Defendant's breath showed an alcohol concentration of at least 0.15.

The charge then instructed the jury to answer the issue, "We do," or "We do not." The jury answered, "We do."

We conclude that even if the trial court erred by submitting the question of whether Madrid had a 0.15 breath alcohol concentration as a special issue, Madrid has not demonstrated any harm from the error. Madrid did not object to this issue at trial until after the jury began deliberating, and he therefore must demonstrate egregious harm. *See Almanza*, 686 S.W.2d at 171. The only harm Madrid identifies is that all of the essential elements of his offense were not included in the application paragraph of the charge. However, the jury found all of the essential elements of Madrid's charged offense beyond a reasonable doubt by finding him guilty of driving while intoxicated and answering the special issue in the affirmative. Madrid does not contend that the evidence was legally or factually insufficient regarding any element of the offense. Defense counsel did not expressly address the special issue

30

in closing, but she did argue that the jury should find Madrid not guilty because the breath test results were unreliable. The State argued to the jury that the results were reliable and it should find Madrid guilty and answer the special issue in the affirmative because the evidence proved that Madrid's breath alcohol concentration exceeded 0.15. In short, there is nothing in the record that suggests that Madrid was egregiously harmed. Accordingly, we conclude that even if submitting the question of whether Madrid's breath alcohol concentration exceeded 0.15 as a special issue was error, it did not result in egregious harm. *See id.* at 174 (harm must be actual, not just theoretical); *see, e.g.*, *Moore v. State*, No. 10-09-00386-CR, 2010 WL 3272398, at *3 (Tex. App.—Waco Aug. 18, 2010, pet. ref'd) (mem. op., not designated for publication) (erroneous submission of elements of offense as special issues did not constitute egregious harm where sufficient evidence supported all elements of offense and in answering special issues in the affirmative, jury found all essential elements of offense).

We overrule Madrid's seventh issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Bland, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).