Opinion issued February 3, 2015



In The

# Court of Appeals

For The

# First District of Texas

---

### NO. 01-13-00975-CR

---

**ANDREW J. SERRANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 1842255**

---

#### MEMORANDUM OPINION

Appellant Andrew J. Serrano was charged and found guilty of driving while intoxicated. The trial court sentenced him to 180 days' confinement, probated for one year. Serrano contends that the trial court's judgment should be reversed because the trial court (1) erred by admitting the results of a breath alcohol test obtained in violation of the Texas Administrative Code and (2) abused its

discretion in refusing to submit an article 38.23 jury instruction. Finding no error, we affirm.

## Background

At trial, Deputy O. Trevino of the Harris County Traffic Division testified that he pulled Serrano over because his radar gun indicated that Serrano was driving 81 miles per hour in a 65 mile-per-hour zone. Trevino approached the vehicle and "immediately . . . could smell obviously the odor of alcoholic beverage emitting from within the car." Trevino further testified that he suspected that Serrano was intoxicated because he had bloodshot eyes and slurred speech. Serrano refused to perform standardized field sobriety tests. Trevino called for a backup unit to transport Serrano to the Houston Police Department's central intoxication facility ("central intox") for further tests.

Deputy J. Fuselier testified that when he arrived at the scene Serrano showed indications of being intoxicated, including "a strong odor of alcoholic beverage," "red, glassy eyes," and "slurred speech." Fuselier transported Serrano to central intox, where they met with the breath test operator, whose name Fuselier could not remember. Fuselier agreed with Serrano's counsel that the operator first "came in contact" with Serrano when they entered the intox room where the breath test is conducted.

2

Fuselier testified that once in the intox room, the operator turned on a video recording device, read Serrano a statutory warning, and requested a breath sample from Serrano. The video recorded for approximately six minutes before the operator turned it off to conduct the breath test. According to Fuselier, there was no time lapse from when the video ended until the time that Serrano provided his breath sample.

Bianca Wooten, who worked as an evidence technician for the Houston Police Department at the time Serrano was arrested, testified that she administered Serrano's breath test. Wooten explained that the breath test operator has to "make sure that the suspect is watched over for 15 minutes" before taking a breath test. The suspects spend these 15 minutes in the intox facility's holding cell, which has a metal door that is "see-through." The breath test operator is not permitted to be inside the holding cell, so she stands outside of it for 15 minutes. Wooten testified that there is frequently more than one evidence technician working at a time, so frequently one is in the hallway outside the holding cell observing the suspects, while another is in the intox room administering a breath test. Wooten noted that operators assign each suspect a timer to ensure that he spends 15 minutes in the holding cell before a breath test is administered. After a suspect has been in the holding cell for 15 minutes, he is taken into the intox room where the operator

3

turns on a video recorder, reads the suspect his statutory warnings, and administers the breath test on the Intoxilyzer.

When Serrano's counsel asked Wooten if she recalled observing Serrano for 15 minutes before administering the breath test, Wooten admitted that she did not specifically remember observing Serrano for 15 minutes. But she testified that she must have administered the test because her identification information is on Serrano's test results and "there's no way that [someone else] can use your information" to do a breath test. Additionally, Wooten testified that she remembered recording the video of Serrano before the breath test and that she appears on the video.

Because Wooten testified on cross-examination that she did not recall observing Serrano for 15 minutes before administering the test, Serrano moved to suppress the breath test results on the ground that the requirement that the suspect be observed for 15 minutes before the test was not observed. The trial court heard arguments on Serrano's motion outside the presence of the jury and stated *sua sponte* that it would submit an article 38.23(a) jury instruction regarding whether the 15 minute requirement was met. Upon recross-examination by Serrano's counsel, Wooten again testified that, "I can't say I actually remember observing [Serrano] specifically, but I had to in order to administer the test."

4

Camille Stafford, a technical supervisor with the Texas Department of Public Safety Breath Alcohol Laboratory, also testified. During her testimony, the State offered the breath test results into evidence. Serrano's counsel objected "on the basis of the test not being conducted properly," and the trial court nevertheless admitted the test results, which reflect that "Wooten, B, D" was the operator and include the operator's certificate number. Stafford then testified that the results indicated that Serrano's blood alcohol concentration was .11, and that she found the tests to be "reliable."

Although the trial court previously stated that it would submit an article 38.23(a) instruction, the charge did not include the instruction. When Serrano objected to its omission at the charge conference, the trial court overruled his objection without explanation. The jury found Serrano guilty, and the trial court sentenced him to 180 days' confinement, probated for one year.

## Motion to Suppress

In his first issue, Serrano argues that the trial court erred in denying his motion to suppress the breath test results because "there is no affirmative evidence that the 15 minute rule was followed while there is affirmative evidence that it was not followed."

## A. Standard of Review

In reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Wiley v. State*, 388 S.W.3d 807, 815 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). We give almost total deference to the trial court's determination of historical facts that depend on credibility, and we conduct a de novo review of the trial court's application of the law to those facts. *Carmouche*, 10 S.W.3d at 327.

When a trial court does not make explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling. *Id.* at 328. That is, "we will assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion." *Id.*

## B. Applicable Law

"A breath specimen taken at the request or order of a peace officer must be taken and analyzed under the rules of the department [of public safety] . . . ." Tex. Transp. Code Ann. § 724.016 (West 2011). The rules for breath-alcohol-testing procedures are set forth in the Texas Administrative Code. *See* 37 Tex. Admin. Code § 19.4(c) (2014). A presumption of admissibility applies when the procedures prescribed by the Department of Public Safety are followed. *See*

*Reynolds v. State*, 204 S.W.3d 386, 309 (Tex. Crim. App. 2006); *Stevenson v. State*, 895 S.W.2d 694, 696 (Tex. Crim. App. 1995).

Here, Serrano contends that the State did not comply with one such rule. It states:

> [a]n operator shall remain in the presence of the subject at least 15 minutes before the test and should exercise reasonable care to ensure that the subject does not place any substances in the mouth. Direct observation is not necessary to ensure the validity or accuracy of the test result . . . .

37 TEX. ADMIN. CODE § 19.4(c)(1). The term "presence" is not defined, but the San Antonio Court of Appeals has considered the term's meaning in a case involving this same provision. It wrote:

> "Presence" has been defined as an [a]ct, fact, or state of being in a certain place and not elsewhere, or within sight or call, at hand, or in some place that is being thought of. The existence of a person in a particular place at a given time particularly with reference to some act done there and then. Besides actual presence, the law recognizes *constructive* presence, which [the] latter may be predicated of a person who, though not on the very spot, was near enough to be accounted present by the law, or who was actively cooperating with another who was actually present.

*State v. Reed*, 888 S.W.2d 117, 122 (Tex. App.— San Antonio 1994, no pet.) (emphasis in original) (citations omitted).

## C. Preservation of Error

The State contends that Serrano failed to preserve his complaint that the operator violated the Texas Administrative Code because he failed to object each

7

time Stafford testified about the breath test results and because Serrano cross-examined Stafford about the results. We disagree.

Here, Serrano moved to suppress the breath test results because, according to him, nobody was able to confirm that Serrano was observed for the required 15 minutes. The trial court heard argument on the motion outside the presence of the jury and implicitly denied the motion, but stated that it would submit an article 38.23 instruction regarding whether the 15-minute waiting period was observed. Thus, his motion to suppress preserved this issue for appeal. *See Black v. State*, 358 S.W.3d 823, 829 (Tex. App.—Fort Worth 2012, pet. ref'd) (When "an objection is presented as a motion to suppress heard outside the presence of the jury, that single objection preserves the issue for appellate review.").

The State also contends that Serrano waived this complaint because his counsel discussed the breath alcohol test results during cross-examination of Stafford. But Serrano's counsel referred to the evidence during Stafford's cross-examination to rebut, explain, or undermine her previous testimony about the test results. We conclude that he did not waive any complaint by doing so. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (defendant does not waive issue for appeal by subsequent cross-examination of witness on allegedly improperly admitted evidence); *Rodriguez v. State*, 274 S.W.3d 760, 764 (Tex. App.—San Antonio 2008, no pet.) ("A defendant does not waive his previous

8

objection to testimony by cross-examining the witness about his direct testimony.").

**D.     Analysis**

Serrano contends that the trial court erred in denying his motion suppress because there is affirmative evidence demonstrating that the operator did not observe the 15-minute waiting period required by section 19.4(c)(1) of the Texas Administrative Code.  In support of this contention, he points out that Deputy Fuselier (1) could not recall the  name of the operator who administered the test for Serrano, and (2) testified that Serrano spent less than 15 minutes in the intox room and did not "make contact" with a breath test operator before entering the intox room.

Wooten testified that a breath test operator observes a suspect for 15 minutes while the suspect is in the holding cell, and before the suspect enters the intox room.  She explained that multiple breath test operators may be present at one time, that the suspect in the holding cell is visible to the operators even when the operators are in the area outside the holding cell, and that the operators use a timer for each suspect to ensure that each spends at least 15 minutes in the holding cell before taking a breath test.  Wooten also testified that she knows that she administered Serrano's test both because her name and identification information are on his results and because she appears on the video taken of Serrano in the

9

intox room. Finally, although Wooten did not specifically recall observing Serrano in the holding cell, she testified that she performed his test in accordance with proper procedures, which includes observing the 15-minute waiting period required by Texas Administrative Code section 19.4(c)(1). Giving the required deference to the trial court's credibility determination, we conclude that the trial court could have credited Wooten's testimony and reasonably concluded that Wooten complied with section 19.4(c)(1). Thus, it did not err in denying Serrano's motion to suppress. *See Stalknecht v. State*, No. 09-06-463-CR, 2007 WL 4991416, at *2 (Tex. App.—Beaumont Mar. 12, 2008, no pet.) (mem. op., not designated for publication) (evidence was sufficient to sustain DWI conviction where officer who administered breath test testified he "had no independent recollection" of appellant but "was sure he observed [appellant] for fifteen minutes prior to asking him to blow into the intoxilyzer because that was standard procedure"); *Currey v. State*, No. 01-01-00091-CR, 2002 WL 123355, at *3 (Tex. App.—Houston [1st Dist.] Jan. 31, 2002, no pet.) (not designated for publication) (trial court did not abuse discretion in denying motion to suppress and admitting breath test results where appellant testified that he did not see sergeant who administered test until entering intox room and sergeant testified that he could not recall administering the test, but "explained that observation begins in the booking area").

10

We overrule Serrano's first issue.

## Section 38.23 Instruction

In his second issue, Serrano contends that the trial court erred in failing to submit an article 38.23 instruction because the evidence raised a fact issue about whether the State observed the 15-minute waiting period in Texas Administrative Code section 19.4(c)(1).

### A.    Standard of Review

We review a claim of jury charge error using the standard set out in *Alamanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). First, we determine whether error exists in the jury charge. Second, if error exists, we determine whether sufficient harm was caused by that error to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). We review a trial court's decision to not submit an instruction in the jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).

### B.    Applicable Law

A defendant's right to the submission of jury instructions under article 38.23 of the Texas Code of Criminal Procedure is "limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). Before a defendant is entitled to the submission of a jury instruction under

11

article 38.23, (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510.

Under the first requirement, there must be a genuine dispute about a material issue of fact before an article 38.23 instruction is warranted; if there is no disputed fact issue, the legality of the conduct is determined by the court alone, as a matter of law. *Id.* at 510. In order for there to be a conflict in the evidence that raises a disputed fact issue, there must be some affirmative evidence in the record that puts the existence of that fact in question. *Id.* at 513. Furthermore, if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence and is not to be submitted to the jury. *Id.* The disputed fact issue must be essential to deciding the lawfulness of the challenged conduct. *Id.* at 511.

## C.    Analysis

Serrano argues that article 38.23's first requirement is met because the evidence raised a fact issue about whether Wooten observed the 15-minute waiting period required by Texas Administrative Code section 19.4(c)(1). In support, Serrano argues that Wooten testified that she did not remember observing Serrano for 15 minutes, Deputy Fuselier testified that Serrano did not "make contact with"

12

Wooten before entering the Intox room, and 15 minutes did not lapse between the beginning of the video recording in the intox room and the breath test.

Serrano points to no evidence that contradicts Wooten's testimony that she must have observed Serrano for 15 minutes while he was in the holding cell because she followed standard procedures. Further, the Administrative Code does not require direct observation, much less "contact." *See* 37 TEX. ADMIN. CODE § 19.4(c)(1) ("Direct observation is not necessary to ensure the validity or accuracy of the test result . . . ."). Thus, Fuselier's testimony that Serrano did not make contact with Wooten until entering the Intox room is not affirmative evidence that Wooten did not comply with Texas Administrative Code section 19.4(c)(1).

We conclude that Serrano failed to raise a fact issue about whether Wooten complied with Texas Administrative Code section 19.4(c)(1) and that Serrano therefore was not entitled to the submission of an article 38.23 instruction. Accordingly, we hold that the trial court did not abuse its discretion in refusing to submit an article 38.23 jury instruction. *See Correa v. State*, No. 05-12-01197-CR, 2014 WL 1797690, at *2 (Tex. App.—Dallas May 2, 2014, no pet.) (mem. op., not designated for publication) (overruling appellant's point of error because he proffered no evidence that operator did not remain in appellant's presence for 15 minutes); *Mbugua v. State*, 312 S.W.3d 657, 669 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (no error in jury charge because there was no conflict in evidence

13

raising a disputed fact that would have mandated a 38.23 jury instruction); *Shpikula v. State*, 68 S.W.3d 212, 217 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (jury's right to disbelieve officers' testimony did not create a factual dispute requiring a jury instruction under article 38.23).

We overrule Serrano's second issue.[1]

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.
Do not publish. TEX. R. APP. P. 47.2(b).

---

[1] In light of our holdings regarding Serrano's first and second issues, we need not reach his third issue, in which he argued that he was harmed by the trial court's alleged errors discussed in his first and second issues.