**Opinion issued August 8, 2017**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-16-00237-CR

_____

**TYLER COLLIN SANDEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 1**
**Galveston County, Texas**
**Trial Court Case No. MD-0332846**

---

## MEMORANDUM OPINION

A jury convicted appellant Tyler Collin Sandel of driving while intoxicated with a breath alcohol concentration level equal to or greater than 0.15, a class A misdemeanor. *See* TEX. PENAL CODE § 49.04(d). He was sentenced to serve 365 days in the Galveston County jail, and his sentence was suspended for 18 months.

On appeal, Sandel challenges the trial court's refusal to instruct the jury to disregard illegally obtained evidence. *See* TEX. CODE CRIM. PROC. art. 38.23

We affirm.

## Background

Appellant Tyler Collin Sandel was leaving a bar when he backed onto a road, narrowly missing the patrol car of Kemah Police Officer M. Hinson. Several minutes later, Hinson stopped Sandel for not wearing his seat belt. Sandel stopped his car "halfway in the roadway." Hinson approached the car, asked for Sandel's license and insurance, and observed his "slurred speech" and his "bloodshot, glassy eyes." Hinson also smelled an "alcoholic beverage coming from inside the vehicle." Sandel handed his driver's license to Hinson, who verified that there were no outstanding warrants.

Hinson testified that he had concerns about Sandel's ability to drive safely. Sandel told Hinson that he had consumed two beers and two shots, and he cooperated with field sobriety tests, all of which indicated that he was intoxicated. Sandel then consented to provide a breath specimen.

The Dickinson Police Department administered breath alcohol tests at its police station upon request of Kemah police officers. At the time of Sandel's arrest, the regulations governing breath alcohol testing required that the test subject

be observed by the officer administering the test for at least 15 minutes before the test to ensure that the subject did not put anything in his mouth.[1]

At 1:50 a.m., after Sandel agreed to take a breath alcohol test, Hinson called the Dickinson police dispatcher to request breath testing. Hinson testified that it usually takes about 10 to 15 minutes for him to get to Dickinson. He drove Sandel to the Dickinson police station, and the event report shows that they arrived just before 1:58 a.m. Hinson testified that he stayed with Sandel until a Dickinson police officer administered the breath test at 2:31 am.

At trial, Hinson testified about the circumstances of Sandel's stop and arrest, including the field sobriety tests. He also gave his opinion, based on his experience and observations, that Sandel was intoxicated at that time due to the consumption of alcohol.

On cross-examination, Hinson was asked what time he and Sandel arrived at the Dickinson police station and what time the breath test began. In an attempt to refresh his recollection, Hinson was shown a note from dispatch, which had a 1:58 a.m. time stamp and which stated that the intoxilyzer operator was "on lunch" and would be "back in 30 minutes." Further questions showed that note from dispatch did not refresh Officer Hinson's recollection:

---

[1]     37 TEX. ADMIN. CODE § 19.4(c)(1) (2014) (Tex. Dep't of Pub. Safety, Approval of Techniques, Methods, and Programs), *repealed by* 40 Tex. Reg. 129, 250–55 (2015).

3

Q: I mean, best you know, you asked for [the intoxilyzer operator] and then they told you he's at lunch, he'll be there in a little bit. Approximately 35 minutes?

A. If that's what it says. I just don't recall.

Q: But is that what it says?

A: Well, we said that a while ago, 1:58.

Q: And he'll be back in 30 minutes?

A: Yes, sir.

Dickinson Police Officer J. Peterson, the intoxilyzer operator, testified that he administered the breath test to Sandel, but he "did not know the exact time" when Sandel arrived at the station to take the test. Peterson testified about how long it took him to administer the test, and he used that information to estimate when Sandel arrived at the station. Peterson testified that the first test was administered at 2:31 a.m. He further testified that before the first test, he was continuously in the room with Sandel for 15 minutes, and he verified that nothing had been placed in Sandel's mouth. Peterson also entered identifying information into the intoxilyzer before he began the test. Based on those factors, Peterson offered a "guess" that Sandel arrived "somewhere right after 2:00." Two tests showed that Sandel's breath alcohol concentration was 0.163 and 0.162.

Sandel argued that the dispatcher's note demonstrated that the rule requiring the 15-minute waiting period was not followed. He argued that if the intoxilyzer

4

operator was "on lunch" for 30 minutes at 1:58 a.m. and the first test was performed at 2:31 a.m., then it was not possible for the operator to observe Sandel for 15 minutes before administering the test. Sandel thus contended that although the dispatcher's note was not admitted into evidence, the testimony about it controverted the testimony from Hinson and Peterson who said that the rule requiring a 15-minute waiting period had been followed. Sandel reasoned that the results of the breath alcohol test had been obtained illegally, and he asked the court to instruct the jury that it could disregard the evidence of his breath alcohol concentration if it agreed that Peterson did not comply with the procedure set forth in the State regulations.

The trial court denied Sandel's requested instruction. The jury found Sandel guilty, and the trial court imposed punishment. Sandel appealed.

## Analysis

On appeal, Sandel argues that the trial court erred by refusing to give the jury his requested instruction to disregard the test results if it believed that the required 15-minute waiting period was not observed. "Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Phillips v. State*, 463 S.W.3d 59, 64 (Tex. Crim. App. 2015). Only if we conclude that there is error in the jury charge do we conduct a harm analysis. *Id.* at 64–65.

5

Article 38.23(a) provides that "evidence obtained by an officer" and "in violation of any provisions of the Constitution or laws" is inadmissible against a criminal defendant at trial. TEX. CODE. CRIM. PROC. art. 38.23(a). In a jury trial, when the evidence creates a question regarding whether "the fruits of a police-initiated search or arrest were illegally obtained, 'the jury shall be instructed that if it believes, or has a reasonable doubt," that the evidence was obtained illegally, it "shall disregard" the evidence that was improperly obtained. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (quoting TEX. CODE. CRIM. PROC. art. 38.23(a)).

"A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). A defendant seeking submission of a jury instruction under Article 38.23(a) must show that the evidence heard by the jury raises an issue of fact, the evidence on that fact is affirmatively contested, and the contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510. To justify an Article 38.23(a) instruction, there must be controverted evidence demonstrating a "factual dispute about how the evidence was obtained." *Robinson*, 377 S.W.3d at 719 (quoting *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)). This

requires that the record include "some affirmative evidence that puts the existence of that fact in question." *Madden*, 242 S.W.3d at 513.

Sandel complains that the breath test, which showed he had a breath alcohol concentration greater than 0.15, was obtained in violation of the testing procedures set forth in the Texas Administrative Code. "A breath specimen taken at the request or order of a peace officer must be taken and analyzed" in accordance with the rules set forth by the Department of Public Safety. TEX. TRANSP. CODE § 724.016.

Sandel argued that the dispatcher's note, which had a time stamp of 1:58 a.m. and stated that Peterson would return from lunch in 30 minutes, created a fact dispute about whether the procedure requiring the intoxilyzer operator to be in the presence of the test subject for 15 minutes was followed. Sandel argued that a person returning from lunch 30 minutes after 1:58 a.m. would not have had time to personally observe a test subject for 15 minutes prior to administering a test at 2:31 a.m. Thus, Sandel requested that the trial court instruct the jury to disregard the test results if it believed the State failed to comply with the law or if it had a reasonable doubt about the State's compliance.

At the time of Sandel's breath test, an intoxilyzer operator was required to "remain in the presence of the subject at least 15 minutes before the test and exercise reasonable care to ensure that the subject does not place any substances in

7

the mouth." 37 TEX. ADMIN. CODE § 19.4(c)(1) (2014) (Tex. Dep't of Pub. Safety, Approval of Techniques, Methods, and Programs), *repealed by* 40 Tex. Reg. 129, 250–55 (2015). The then-applicable rule also provided that "[d]irect observation is not necessary to ensure the validity or accuracy of the test result."[2] *Id.*

Sandel requested the following jury instruction:

> You are instructed that no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> You are further instructed that before you may consider the results of any breath or chemical test, you must find beyond a reasonable doubt that the regulations of the Department of Public Safety were complied with in administering the test. The regulations of the Department of Public Safety include:

> (1)    An observation period of fifteen minutes during which the subject of the test did not eat, smoke, vomit or otherwise introduce ay substance into his mouth;

---

[2] After Sandel's breath test on February 27, 2013, and before his conviction on December 2, 2015, the Department of Public Safety adopted new amendments and sections to its rules governing breath tests, effective January 12, 2015, in order to reorganize, update, and clarify them. *See* 40 Tex. Reg. 129, 250–55 (2015). The rule regarding the 15-minute observation period is now codified in section 19.3 of the Texas Administrative Code. *See* 37 TEX. ADMIN. CODE § 19.3 (2015) (Tex. Dep't of Pub. Safety, Techniques and Methods). In this opinion, we analyze Sandel's issue under former section 19.4(c)(1), which was effective at the time of his breath test. *See Patel v. State*, No. 01-14-00575-CR, 2015 WL 5821439, at *1, n.1 (Tex. App.–Houston [1st Dist.] Sep. 29, 2015, pet. ref'd) (mem. op.).

(2)   Checking the reference sample device to assure that it is properly sealed;

(3)   Maintaining the breath tube inside the housing until the subject test.

If you have found beyond a reasonable doubt that all of these requirements were complied with, then you may consider the results of the test in your deliberations. But, if you do not find, or if you have a reasonable doubt as to the compliance, then you may not consider said test for any purpose and shall not consider it whatsoever in arriving at your verdict.

For Sandel to have been entitled to an instruction on the issue of the 15-minute waiting period, there had to be a disputed fact issue about compliance with the mandatory 15-minute waiting period. This required some affirmative evidence that Peterson did not comply with the required 15-minute waiting period. *See Madden*, 242 S.W.3d at 514.

Sandel relied on information from the dispatcher's note, but the note was not admitted into evidence. Rather, defense counsel used it in an attempt to refresh Hinson's recollection, and Hinson testified that the dispatcher's note did not refresh his recollection. The information was made known to the jury only through the defense attorney's cross-examination of Hinson, and a "cross-examiner cannot create a factual dispute for purposes of an Article 38.23(a) instruction merely by his questions." *Id.* Moreover, Sandel's argument that the information from the dispatcher's note supported an inference that the Peterson was away from the police station and did not return until 30 minutes after 1:58 am. is unsound. While

9

the dispatcher's note indicated when the dispatcher expected Peterson to return, it did not indicate when he actually returned, which was the information needed as the start time for Sandel's computation of time periods.

Contrary to Sandel's argument, Peterson testified several times that he observed the waiting period. Hinson's event report from Sandel's arrest showed arrival at the police station just minutes before 2:00 a.m. There is no affirmative evidence that Peterson did not comply with the 15-minute waiting period. "To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact in question." *Id.* at 513. Because there is no affirmative evidence in the record creating a factual dispute about how the evidence was obtained, we overrule Sandel's sole issue. *See Robinson*, 377 S.W.3d at 719; *Madden*, 242 S.W.3d at 513; *see also Serrano v. State*, 464 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (defendant not entitled to Article 38.23 submission because there was no factual dispute about whether the State followed 15-minute waiting period for DWI breath testing).

**Conclusion**

We affirm the judgment of the trial court.

                                        Michael Massengale
                                        Justice

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).