**Opinion issued December 14, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00810-CR

———————————

**JACOB RHODES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1979692**

---

## MEMORANDUM OPINION

Jacob Rhodes was convicted of unlawfully carrying a weapon.[1] In two issues, he contends that the trial court erred in (1) omitting from the charge a jury instruction to disregard evidence the jury believed was obtained unlawfully

---

[1] *See* TEX. PENAL CODE § 46.02(a).

and (2) including in the charge a jury instruction based on a statutory provision that had been repealed. We affirm.

## Background

Early one morning, a resident of a neighborhood subdivision heard a "loud noise" coming from the park that "sounded like a male and female fighting." The resident called the police, and Deputies R. Lindsay and Q. Sneed of the Harris County Sheriff's Office were dispatched to the scene.

When Lindsay and Sneed arrived, they found Rhodes and his friend, David Keuhn, standing at the front of the park. "They both looked a little upset." Rhodes and Keuhn told the deputies that they had been "hanging out" with their girlfriends at the park but their girlfriends had left after the four of them got into an argument.

Rhodes told the deputies that his parents were out of town and asked them if they could give him a ride back to Keuhn's house, which was nearby. Sneed told Rhodes that if he wanted a ride, he would have to be searched, as it was department policy to search anyone who rode in the backseat of a patrol car. According to the deputies, Rhodes consented, and Sneed then searched him, found a loaded handgun in Rhodes's front pocket, and arrested him.

Rhodes was charged with unlawfully carrying a weapon. He was tried, convicted, and sentenced to one year in county jail, suspended for one year while on community supervision. Rhodes appeals.

**Jury Charge Issues**

Rhodes raises two jury charge issues. First, Rhodes contends that the trial court erred in omitting from the charge a jury instruction to disregard evidence the jury believed had been unlawfully obtained. Second, Rhodes contends that the trial court erred by including in the charge a jury instruction based on a statutory provision that had been repealed.

**A.     Applicable law and standard of review**

Under the Code of Criminal Procedure, the trial court must "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. art. 36.14. "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case . . . ." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).

We review a claim of jury charge error in two steps. *Serrano v. State*, 464 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). First, we determine whether error exists in the jury charge. *Id.* Second, if error exists, we determine whether sufficient harm was caused by that error to require reversal. *Id.*

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Rodriguez v. State*, 456 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (quoting *Hutch*, 922 S.W.2d at 171). If error is preserved, reversal is required upon a showing of "any harm, regardless of

3

degree . . . ." *Rodriguez*, 456 S.W.3d at 280. But if error is not preserved, then reversal is required only upon a showing of "egregious harm." *Id.* (quoting *Almanza*, 686 S.W.2d at 171). In either case, the "harm must be actual, not merely theoretical." *Zamora v. State*, 432 S.W.3d 919, 924 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In determining whether the error caused sufficient harm, we consider "(1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole." *Rodriguez*, 456 S.W.3d at 280.

## B.     Omission of instruction to disregard unlawfully obtained evidence

Rhodes first contends that the trial court erred in omitting a jury instruction to disregard evidence the jury believed was unlawfully obtained. Rhodes contends that he was entitled to the instruction under Article 38.23 of the Code of Criminal Procedure. Article 38.23 provides, in pertinent part:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

4

TEX. CODE CRIM. PROC. art. 38.23(a).

"Before a defendant is entitled to the submission of a jury instruction under article 38.23, (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence." *Serrano*, 464 S.W.3d at 7. Thus, "there must be a genuine dispute about a material issue of fact before an article 38.23 instruction is warranted; if there is no disputed fact issue, the legality of the conduct is determined by the court alone, as a matter of law." *Id.*

"In order for there to be a conflict in the evidence that raises a disputed fact issue, there must be some affirmative evidence in the record that puts the existence of that fact in question." *Id.* "This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument." *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008).

Rhodes argues that he was entitled to an instruction under Article 38.23 because the evidence raised the issue of whether he consented to Sneed's search of his person, which, in turn, raised the issue of whether his handgun was obtained unlawfully. Specifically, Rhodes contends that Lindsay and Sneed provided materially conflicting testimony concerning Rhodes's response to Sneed informing him that he would have to be searched to receive a ride. We disagree.

5

The deputies consistently testified that Rhodes consented to Sneed's search. On direct examination, Lindsay testified that Rhodes consented to Sneed searching him:

> A. I heard my partner, Deputy Sneed, ask him if he had a problem with him searching him because everybody that goes in our backseat gets searched, and he consented to the search. He did not have a problem with that.

On cross, Lindsay again testified that Rhodes consented to Sneed's search:

> Q. And so, you're telling us that Jacob consented to you searching him after he asked you for a ride home?
>
> A. He consented to Deputy Sneed's search question. I did not search him.

Sneed likewise testified that, when he advised Rhodes that it was the department's policy to search everyone who rode in the patrol car's backseat, Rhodes "threw" his "hand ups" and said, "Oh, okay." Sneed later explained that he understood Rhodes's response as expressing his "clear consent" to be searched:

> Q. Now Officer, going back to when the defendant you said stepped back and put his hands up and said, oh, okay, what did that mean to you?
>
> A. It was a clear consent to search for me. If he said okay after I advised him that he would have to be searched to get in the backseat of my patrol car.
>
> Q. And why is that a clear indication to you that he consented?
>
> A. Well, to me, okay would be yes and no would be no or I decline or never mind, I don't want a ride home or there would have been another reaction than okay.

6

Q. And in this case did the defendant exhibit any other reaction than the okay that you heard?

A. No, ma'am.

On cross, Sneed did not offer any testimony on this issue that conflicted with his prior testimony or Lindsay's prior testimony. Thus, both deputies testified that Rhodes consented to be searched after Sneed explained the department's policy to him. Their testimony on this issue did not conflict or otherwise entitle Rhodes to an Article 38.23 instruction.

Rhodes argues that Sneed's testimony (1) shows that Rhodes's response to Sneed was "too ambiguous" to constitute voluntary consent and (2) raises the issue of "whether Sneed obtained Rhodes's consent through coercion." Again, we disagree.

Sneed testified that, after he told Rhodes that he would have to be searched if he wanted a ride, Rhodes "threw" his "hand ups" and said, "Oh, okay." There was nothing ambiguous about the response; under these circumstances, where Rhodes was seeking a ride that the deputies agreed to provide conditioned on a search, any reasonable deputy would have understood Rhodes to be consenting to a search to get the requested ride.

Regarding the alleged coercion, Rhodes contends that (1) Sneed knew that Rhodes was a 17-year-old who was left at the park in the middle of the night by his

girlfriend; (2) Rhodes was insistent that he did nothing wrong and "just wanted a ride home"; (3) Sneed told him he would give him a ride but only if he consented to a search; and (4) Sneed failed to inform Rhodes that he was free to leave after the deputies finished questioning him. These facts do not raise the issue of whether Rhodes was coerced. They do not, for example, show that the deputies threatened Rhodes or led him to believe that he had to be searched.

Finally, Rhodes maintains that Lindsay and Sneed provided conflicting testimony on four other issues: (1) whether Rhodes told the deputies where he wanted to be dropped off; (2) whether the deputies agreed to give Rhodes a ride; (3) whether Sneed searched Rhodes from the front or the back; and (4) whether Sneed or Lindsay cleared the gun and arrested Rhodes. But these four issues were not "essential to deciding the lawfulness of the challenged conduct." *Serrano*, 464 S.W.3d at 7. Assuming the deputies provided conflicting testimony on these four issues, such conflict would not raise the issue of whether Rhodes consented to be searched.

We hold that the trial court did not err in omitting an instruction under Article 38.23 because the evidence did not raise the issue of whether the deputies obtained Rhodes's gun unlawfully by searching Rhodes without his consent. Therefore, we overrule Rhodes's first issue.

**C.      Inclusion of instruction on repealed statutory provision**

In his second issue, Rhodes contends that the trial court erred by including an instruction on a statutory defense that was based on a repealed provision of the statute.

Rhodes was charged with unlawfully carrying a weapon under Section 46.02 of the Penal Code. TEX. PENAL CODE § 46.02. Under Section 46.02, "[a] person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun . . . ." *Id.* § 46.02(a) (internal numbering omitted). However, Section 46.15 makes Section 46.02 inapplicable to a person who is "traveling." *Id.* § 46.15(b)(2) ("Section 46.02 does not apply to a person who . . . is traveling . . . ."). "The traveling exclusion from Section 46.02 has the procedural and evidentiary consequences of a defense." *In re A.G.*, 292 S.W.3d 755, 759 (Tex. App.—Eastland 2009, no pet.).

The trial court's charge provided the jury with three instructions on the traveling defense. First, the trial court instructed the jury that it is "not an offense to carry a handgun while traveling . . . ." Second, the trial court instructed the jury on some of the factors to consider when determining whether a defendant was

traveling. Third, the trial court instructed the jury on when a defendant is "presumed" to be traveling.[2]

Rhodes argues that the inclusion of the third instruction was erroneous because it tracked the language of a provision of the statute that was repealed before the date on which Rhodes committed the offense. He argues that the inclusion of the instruction was harmful because the instruction may have led the jury to mistakenly believe that it could not find for Rhodes on his traveling defense unless it also found that the presumption applied.

In 2005, the statutory traveling defense was amended to include a provision setting forth the circumstances under which a defendant was presumed to be

---

[2] The instruction first defined the circumstances under which a person is presumed to be traveling: "A person is presumed to be traveling if the person is (1) in a private motor vehicle, (2) not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic, (3) not otherwise prohibited by law from possessing a firearm, (4) not a member of a criminal street gang, as defined by Section 7101 Penal Code, and (5) not carrying a handgun in plain view." The instruction then addressed the presumption's application, stating: "The presumption applies unless the state proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist. If the state fails to prove beyond a reasonable doubt that the facts giving rise to the presumption do not exist, you must find that the defendant was traveling. In addition, even though you may find that the presumed fact does not exist, the state must prove beyond a reasonable doubt each of the elements of the offense charged, and if you have a reasonable doubt as to whether the presumed fact exists, the presumption applies and the jury must consider the presumed fact to exist."

traveling.[3] However, in 2007, the statutory presumption was repealed.[4] Rhodes was charged with committing the offense on August 23, 2014—over seven years after the statutory presumption's repeal. Thus, the statutory presumption was not "law applicable to the case . . . ." TEX. CODE CRIM. PROC. art. 36.14. We therefore hold that the trial court erred in including the instruction.

Having determined that the inclusion of the instruction was error, we must now determine whether sufficient harm was caused by that error to require reversal. *Serrano*, 464 S.W.3d at 7. Considering the jury charge, state of evidence, and argument of counsel, we hold that the error was harmless. *See Rodriguez*, 456 S.W.3d at 280.

As noted above, before instructing the jury on the traveling presumption, the charge instructed the jury on some of the factors to consider when determining whether a defendant was traveling:

> In determining whether the defendant was "traveling" you may consider the distance, time and method of transportation. The purpose of travel and the defendant's occupation are not relevant. The journey is not measured by how far the defendant may have come, but by the entire journey intended by the defendant. Further, a temporary cessation in the journey does not remove this right, so long as the

---

[3]     *See* Act of May 27, 2005, 79th Leg., R.S., ch. 288, § 1, 2005 Tex. Gen. Laws 866, 866–67, *repealed by*, Act of May 23, 2007, 80th Leg., R.S., ch. 693, § 3(2), 2007 Tex. Gen. Laws 1318, 1319.

[4]     *See* Act of May 23, 2007, 80th Leg., R.S., ch. 693, § 3(2), 2007 Tex. Gen. Laws 1318, 1319.

cessation in the journey relates to the business of the journey, or to food or any other legitimate reason related to the journey.

From this instruction, a reasonable jury would conclude that it could find for Rhodes on his traveling defense even if it also found that the traveling presumption did not apply. The State never argued during closing that the presumption had to apply for the jury to find that Rhodes was traveling. We therefore disagree with Rhodes's argument that the instruction may have led the jury to mistakenly believe that the presumption had to apply in order to find that Rhodes was traveling at the time of the offense.

Given the other instructions concerning the traveling defense, it is difficult to see how the inclusion of the presumption instruction, even though erroneous, could have harmed Rhodes. The presumption, after all, was in Rhodes's favor—had the jury found that it applied, Rhodes would have enjoyed an undeserved benefit. That the jury rejected a legally unavailable presumption does not show harm.

The lack of evidence supporting Rhodes's defense further demonstrates that the error was harmless. "While Texas courts have never explicitly defined traveling, they generally consider the distance, time, and mode of travel." *Sanchez v. State*, 122 S.W.3d 347, 355–56 (Tex. App.—Texarkana 2003, pet. ref'd); *see Soderman*, 915 S.W.2d at 609. Generally, the defense only applies to persons who have a destination that is "some distance from their home . . . ." *Ayesh v. State*, 734

12

S.W.2d 106, 108 (Tex. App.—Austin 1987, no pet.). Thus, "if the journey is so short there is no real journey, then one is not a traveler." *Sanchez*, 122 S.W.3d at 356 (holding that defendant who drove "by automobile approximately fifteen miles" was not "traveling" for purposes of statutory exception as matter of law). "Moreover, if a traveler loiters along the way or unnecessarily deviates from the course of travel, the travel exemption does not apply." *Soderman*, 915 S.W.2d at 609.

The evidence shows that when the deputies arrived, Rhodes and Keuhn were "hanging out" in the park after-hours and that, had they not been confronted by the deputies, they would have eventually walked back to Keuhn's house, which was nearby. That does not qualify as "traveling." *See, e.g.*, *Payne v. State*, 494 S.W.2d 898, 900 (Tex. Crim. App. 1973) (holding that defendant was not entitled to instruction on traveling defense, despite testimony that he was carrying gun en route to city residence from country residence, where he deviated from course of travel between residences and loitered in lounge); *Sanchez*, 122 S.W.3d at 355–56 (holding that defendant was not entitled to instruction on traveling defense when defendant made short, fifteen-mile drive to relative's house); *see also Madrigales v. State*, No. 13-03-133-CR, 2004 WL 5050901, at *4 (Tex. App.—Corpus Christi Aug. 26, 2004, no pet.) (mem. op., not designated for publication) (holding that defendant was not entitled to instruction on traveling defense as matter of law

when defendant was stopped by police while making two-hour drive home after "a day of fishing at the beach").

We conclude that no reasonable jury could have found that the traveling affirmative defense applied. To the extent his position was bolstered by a legally unavailable presumption, Rhodes was not harmed. Therefore, we overrule Rhodes's second issue.

## Conclusion

We affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Justices Keyes, Brown, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).