**Opinion issued March 6, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00232-CR

———————————

**JORGE ERNESTO LINARES-LAINEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 16**
**Harris County, Texas**
**Trial Court Case No. 2094570**

---

## MEMORANDUM OPINION

Jorge Linares-Lainez and A.B. ("Alice") are estranged spouses. Domestic violence during their marriage led to the issuance, in April 2016, of an agreed protective order that prohibits Jorge from committing family violence against

Alice, communicating directly with Alice in a threatening or harassing manner, going within 200 feet of Alice's residence, and other specifically proscribed acts.

Jorge was seen at Alice's apartment two months after the protective order issued and was arrested. He was charged with violation of a protective order,[1] convicted, and sentenced to one year in county jail.

In two issues, Jorge contends that the evidence is legally insufficient to support his conviction and that the trial court erred by failing to require jury unanimity in its verdict. We affirm.

## Background

An agreed protective order was issued in April 2016 that prohibits Jorge from engaging in certain threatening conduct directed at his estranged wife, Alice. The State sought the protective order based on Alice's allegations that Jorge had sexually assaulted her. Jorge agreed to the issuance of the protective order. It prohibits Jorge from going within 200 feet of Alice's residence and communicating directly with Alice in a threatening or harassing manner, among other actions. Jorge admitted that he had always been aware of the protective order and its restrictions.

In June 2016—two months after the protective order was entered—Jorge was arrested near Alice's apartment. He was charged with violating the protective

---

[1] *See* TEX. PENAL CODE § 25.07(a).

order. The indictment alleged that Jorge violated the protective order "by intentionally and knowingly communicating with a protected individual, namely, [Alice], namely by going to the complainant's home and refusing to leave." At trial, three witnesses testified: Alice, the arresting officer, and Jorge.

Alice testified that she was driving home from work one evening when she received a phone call from a neighbor telling her that Jorge was outside her apartment. She called 9-1-1 and continued driving home. As she arrived minutes later, she saw Jorge at her apartment. When she and Jorge saw each other, Jorge left. Alice testified that seeing Jorge at her apartment in violation of the protective order made her feel "alarmed."

When Sergeant M. Johnson of the Pasadena Police Department arrived a few minutes later, he interviewed Alice. Alice showed him an image of Jorge and described the clothes Jorge was wearing and the vehicle he drove. Based on Alice's description and the picture, Sergeant Johnson realized that he had seen Jorge walking within the apartment complex as he pulled into its entrance. As Sergeant Johnson finished talking to Alice, he noticed a similar vehicle with a similar-looking driver passing by the apartment complex. Sergeant Johnson and other officers pursued the vehicle, stopped it within minutes, realized the driver was Jorge, and questioned him. Jorge denied being at Alice's apartment complex and stated that he was driving directly from his apartment to a nearby McDonald's.

Sergeant Johnson did not find Jorge's explanation credible because he had seen Jorge walking within the apartment complex and because Jorge was driving the wrong direction to be going to the McDonald's location he described.

Sergeant Johnson testified that Jorge was within 200 feet of Alice's residence when Johnson first saw him as the officer arrived at the apartment complex and again when Jorge drove in front of the apartment complex.

Jorge acknowledged in his testimony that he had agreed to the protective order and realized that it prohibited him from communicating with Alice in a threatening or harassing manner. He agreed that it further prohibited him from engaging in conduct directed toward Alice that was alarming to her. And he agreed that it would be threatening to Alice to see him at her apartment in violation of the protective order.

Jorge was asked if his presence at Alice's apartment "would be sending a message" to Alice:

> State: If you were to be there, that would be sending a message that's pretty threatening, keeping in mind that there's a protective order in place?
>
> Jorge: Yes. If there's an order, I believe so, yes.

While acknowledging that being at Alice's apartment would send a threatening message, he categorically denied that he had been there that day.

Jorge testified that Alice was mistaken in her description of his clothes that day and that she and Sergeant Johnson were lying when they testified that they had seen him at the apartment complex. He admitted only to driving past the apartment complex on his way to McDonald's.

After the three witnesses testified, both parties gave brief closing arguments and the court's charge was read to the jury. The jury was instructed that a person commits the offense of violation of a protective order if he "knowingly or intentionally communicates directly with a protected individual in a threatening or harassing manner." The jury was further instructed to find Jorge guilty if it found beyond a reasonable doubt that Jorge violated the protective order by "intentionally or knowingly communicating with a protected individual, namely [Alice], namely by going to [Alice's] home and refusing to leave . . . ." Jorge did not object to the charge. The jury found Jorge "guilty as charged in the Information."

Punishment was assessed by the trial court. The trial court received evidence that Jorge had a history of sexually assaulting Alice. There also were references to testimony during the guilt-innocence phase of the trial indicating a pattern of violations of the protective order during the two months it was in place before Jorge's arrest. This included Alice's testimony that she had called the police in the past "and anytime that they would get there, he always ends up running away." Additionally, there was a discussion about Jorge's demeanor during the guilt-

innocence phase of the trial, which was described as "smirking" as he testified that Alice and Sergeant Johnson had been lying when they testified. Jorge's attorney apologized to the trial court for any poor "impression" Jorge's conduct gave.

The trial court sentenced Jorge to the maximum jail term permitted for the misdemeanor offense—one year in county jail. *See* TEX. PENAL CODE §§ 12.21(2), 25.07(a), (g). Jorge appeals.

## Sufficiency of the Evidence

In his first issue, Jorge contends that the evidence is legally insufficient to support his conviction for violating the protective order, given the particular manner and means alleged in the indictment. He concedes that there is legally sufficient evidence that he was within 200 feet of Alice's residence on the day of his arrest, but he points out that the indictment alleged that he violated the protective order—not by being within 200 feet, but, instead—by intentionally or knowingly communicating in a threatening manner. Focusing on the State's choice to limit itself to only one manner and means, he argues that there was legally insufficient evidence that he engaged in a communication.

## A.     Standard of review

We review sufficiency of the evidence using the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). *See Brooks v. State*, 323 S.W.3d 893, 898–912 (Tex. Crim. App. 2010). Under that standard, "the relevant question

6

is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider all reasonable inferences that may be drawn from the evidence in making our determination, including all direct and circumstantial evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidence is insufficient in four circumstances: (1) no evidence exists that is probative of an element of the offense in the record; (2) only a "modicum" of evidence exists that is probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the alleged acts do not establish the criminal offense charged. *See Jackson*, 443 U.S. at 314, 320; *Laster*, 275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The jury has the exclusive role of evaluating the facts, the credibility of the witnesses, and the weight a witness's testimony should be given. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The jury may choose to believe all, some, or none of a witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). And

the jury alone must reconcile any conflicts in the evidence. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).

Under the *Jackson* standard, we defer to the factfinder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. If there are conflicts in the evidence, we must presume the factfinder resolved the conflicts in favor of the verdict and defer to that determination, as long as it is rational. *See Jackson*, 443 U.S. at 326; *Penagraph*, 623 S.W.2d at 343 ("A jury is entitled to accept one version of the facts and reject another or reject any of a witness'[s] testimony."). Contradictory evidence will not diminish the legal sufficiency of the evidence that supports the verdict. *See McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1970). If the evidence is insufficient, we must reverse and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

## B.    Evidence is legally sufficient

Jorge argues that there is insufficient evidence that he communicated with Alice. We disagree.

### 1.    *Communicate* is not statutorily defined

One commits an offense under Section 25.07 if, among other means, he "communicates . . . directly with a protected individual . . . in a threatening or

harassing manner . . . ." TEX. PENAL CODE § 25.07(a)(2)(A). Section 25.07 defines several of its terms, but *communicates* is not one of them. *See id.* § 25.07(b). Likewise, the Penal Code's general definition section does not define the terms *communicates* or *communication*. *See id.* § 1.07.

"Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992); *cf.* TEX. CODE CRIM. PROC. art. 3.01 ("All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined."). Reviewing courts may not employ definitions that are "more restrictive than the jurors themselves were legally entitled to use." *Vernon*, 841 S.W.2d at 409.

*Black's Law Dictionary* defines *communication* as the "interchange of messages or ideas by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception." *Communication*, BLACK'S LAW DICTIONARY (10th ed. 2014).

### 2. Jorge's testimony provided legally sufficient evidence of a communication

Jorge concedes that communication can be both verbal and nonverbal. *See id.*; *see also Skidmore v. State*, 838 S.W.2d 748, 757 (Tex. App.—Texarkana 1992, pet. ref'd) (Bleil, J., concurring) (discussing nonverbal communication); *Beltran v.*

*State*, No. 04-14-00323-CR, 2015 WL 4273280, at *3 (Tex. App.—San Antonio July 15, 2015, no pet.) (mem. op., not designated for publication) (holding that obscene gesture made by person subject to protective order toward his ex-wife and her current boyfriend was "evidence of an actual communication"). Threats also can be verbal and nonverbal. *Smith v. State*, 286 S.W.3d 333, 343 (Tex. Crim. App. 2009) ("A threat can be both verbal and nonverbal.").

Jorge agrees that it is possible to communicate through nonverbal conduct but argues that, even if the jury believed Alice and Sergeant Johnson that Jorge was at the apartment that day, his "mere presence," alone, is not conduct that can support a finding of a communication. Jorge's argument is premised on the assertion that the only evidence offered was of his "mere presence." But there was more.

During his testimony, Jorge agreed that his conduct at Alice's apartment, if the jury believed Alice, "would be sending a message that's pretty threatening" to Alice in light of the protective order. Thus, Jorge conceded that his conduct—if the jury were to find that he engaged in it—communicated a threat to Alice. Jorge's admission is particularly noteworthy because, as her husband, he knew their history and reasonably would be expected to know her likely response to his presence within the prohibited area near her apartment. *See Sisk v. State*, 74 S.W.3d 893, 900 (Tex. App.—Fort Worth 2002, no pet.) (holding that jury

10

reasonably could conclude that person subject to protective order knew his conduct in continuing to engage protected person would be regarded as threatening).

Alice confirmed that she felt threatened on this occasion by Jorge's conduct, as she had on earlier occasions when he engaged in a similar course of conduct.[2] *Cf. Olivas v. State*, 203 S.W.3d 341, 350 (Tex. Crim. App. 2006) (holding that pattern of incidents in which defendant would attempt to engage woman who rejected his affection reasonably could support conclusion that she perceived threat from unwanted attempts to engage her).

Based on this evidence, particularly Jorge's admission that the conduct described would communicate a threatening message to Alice, we conclude that a reasonable jury could have found beyond a reasonable doubt that Jorge intentionally or knowingly communicated directly to Alice in a threatening manner.

We overrule Jorge's first issue.

## Jury Unanimity

In his second issue, Jorge contends that the trial court erred by failing to require jury unanimity in its verdict. According to Jorge, different jurors could

---

[2] Alice testified that Jorge once took their daughter without permission and, later the same day, knocked on her apartment door and returned their daughter. He stayed at the apartment around five minutes. His presence at her apartment and violation of the protective order, on this and other occasions, made Alice feel alarmed and threatened.

have convicted him based on protective-order violations on different days involving different conduct.

## A.     Applicable law and standard of review

In all criminal cases, "the jury must be unanimous in finding every constituent element of the charged offense . . . ." *Saenz v. State*, 451 S.W.3d 388, 390 (Tex. Crim. App. 2014) (quoting *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014)). But the jury need not agree on all the "underlying brute facts [that] make up a particular element." *Ngo v. State*, 175 S.W.3d 738, 747 (Tex. Crim. App. 2005 (quoting *Richardson v. United States*, 526 U.S. 813, 815 (1999)). If a statute provides various, alternative manner and means of committing the offense, and the State pleads only one the alternatives, then the State is required to provide that the defendant committed the offense using that specific statutory manner and means. *Thomas v. State*, 444 S.W.3d 4, 8–9 (Tex. Crim. App. 2014).

We review a claim of jury charge error in two steps. *Serrano v. State*, 464 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). First, we determine whether there is error in the jury charge. *Id.* Second, if there is error, we determine whether sufficient harm was caused by that error to require reversal. *Id.* "The degree of harm necessary for reversal depends upon whether the error was preserved." *Rodriguez v. State*, 456 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim.

App. 1996)). If error was not preserved, then reversal is required only upon a showing of "egregious harm." *Rodriguez*, 456 S.W.3d at 280 (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).

Egregious harm is a "high and difficult standard" to satisfy. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Charge error results in egregious harm when "it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). The appellant must show actual rather than theoretical harm to support a finding of egregious harm. *Villarreal*, 453 S.W.3d at 433.

## B.    Egregious harm not demonstrated

Jorge argues that he suffered egregious harm because the jury could have impermissibly convicted him without unanimity if some jurors believed that he communicated directly with Alice in a threatening manner when they saw each other at the apartment complex on the day of his arrest while other jurors believed, instead, that he communicated directly with her in a threatening manner when he knocked on Alice's door on an earlier date to return their daughter.

Assuming without deciding that the charge allowed for a conviction on either of these events and that doing so allowed for a verdict that was not

unanimous, Jorge would have to establish egregious harm to obtain a reversal because he did not object to the court's charge. *Rodriguez*, 456 S.W.3d at 280.

In assessing whether harm was egregious, we look to the particular facts of the case and consider (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of the probative evidence, (3) the parties' arguments, and (4) other relevant information in the record. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

### 1. Jury charge

While the jury charge instructed the jury that the date of the offense was "on or about June 2, 2016," which was the date of Jorge's arrest, it did not otherwise limit the jury's consideration to only the events that day to the exclusion of any earlier events, including the knocking incident. *See Yzaguirre v. State*, 957 S.W.2d 38, 39 (Tex. Crim. App. 1997) (stating that phrase "on or about" in indictment means any time before date of presentment of indictment that falls within statute of limitations); *see also* TEX. CODE CRIM. PROC. art. 21.02(6) (requiring that indictment list date of offense that is earlier than presentment of indictment but not outside statute of limitations). Assuming that the charge's failure to require unanimity with regard to the events that constitute an offense was error, this factor weighs in favor of a finding of egregious harm. *Arrington*, 451 S.W.3d 841.

14

## 2.    State of evidence

There were a couple instances during Alice's direct testimony in which the State reminded Alice to limit her discussion to the events on the day of Jorge's arrest. She mostly complied, but she also disclosed that there had been earlier alleged violations of the protective order. She said that, when she had been told in the past that Jorge was near her apartment, she would call the police. She continued, "And anytime that they would get there, he always ended up running away." The State responded by again asking Alice to testify only about the events on the day of the arrest. Thereafter, Alice limited herself to discussing only what had occurred on that day.

On cross-examination, Jorge's counsel asked Alice if she had ever reported to the police that Jorge banged loudly on her door and refused to leave. She agreed that she had but clarified that it occurred on a different day, sometime between the issuance of the protective order and Jorge's arrest.

On redirect, the State argued that Jorge had opened the door concerning the earlier event and asked Alice to explain what had occurred that day. Alice explained that Jorge once took their daughter without permission and, later that afternoon, had knocked on her door when he brought her home. She described it as a "normal, regular" knock. Alice was asked about Jorge's emotion state during the transfer, and she replied: "Well, he just told me: Here she is. I brought her for

you." She testified that Jorge stayed "around five minutes" and then left. According to Alice, Jorge's presence at her apartment on that day—like the day of Jorge's arrest and the earlier incident of family violence that led to the protective order—made her feel alarmed and threatened.

Alice's discussion of the earlier knocking incident was minimal. The majority of Alice's testimony, and the focus of her direct and cross examination, was on the events that occurred on the day of Jorge's arrest that the State argued constituted a violation of the protective order.

During his testimony, Jorge denied both events and claimed to have never violated the protective order.

In sum, Alice testified that both incidents occurred, and Jorge denied both. This presented a "he said, she said" scenario in which jurors were called upon to assess credibility and determine facts. *See Linney v. State*, 401 S.W.3d 764, 772 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("[C]redibility of both the complainant and the defendant is a central, often dispositive issue in . . . 'he said, she said' trials . . . ."). Nothing about these two witnesses' testimony invited jurors to conclude that one of the two events occurred but the other had not. *See Flores v. State*, 513 S.W.3d 146, 160 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (concluding no egregious harm because evidence did not support jury determination that one discrete criminal act occurred but other had not). On this

16

testimony, it is very unlikely that any juror disbelieved Alice about Jorge's being at her apartment on the day of the arrest but believed her about the earlier knocking incident, particularly given that Sergeant Johnson testified that he too saw Jorge at the apartment on the day of the arrest and there was uncontroverted evidence that Jorge was arrested just outside the apartment complex only minutes later.

We conclude that the state of the evidence makes it unlikely that any juror found beyond a reasonable doubt that Jorge had knocked on Alice's door in violation of the protective order but rejected that he had appeared at her apartment on the day of his arrest. *See id.* The state of the evidence weighs against a finding of egregious harm.

### 3. Parties' arguments

The knocking incident was not discussed by the State or Jorge in their opening or closing statements during the guilt-innocence phase of the trial. The focus was solely on whether Jorge was at Alice's apartment and communicated with her on the day of his arrest. This factor weighs against a finding of egregious harm.

### 4. Other relevant information

We see no other relevant information that would counsel for or against a conclusion of egregious harm.

### 5. Conclusion of no egregious harm

Only the first of these four factors weighs in favor of egregious harm. On balance, we conclude that Jorge has not demonstrated that he suffered egregious harm. *See id.* at 161.

We overrule Jorge's second issue.

## Conclusion

We affirm.

Harvey Brown
Justice

Panel consists of Justices Keyes, Brown, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

18