In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00016-CR
_____

JAVIER MARTINEZ CALDERON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 411th District Court
Polk County, Texas
Trial Cause No. 24794

## MEMORANDUM OPINION

A jury found Javier Martinez Calderon guilty of possession of a controlled substance, methamphetamine, in the amount of four grams or more but less than two hundred grams, with intent to deliver. The jury assessed punishment at twenty-two years in prison and assessed a $10,000 fine. In four issues, Calderon appeals his conviction. We affirm the trial court's judgment.

Background

Officer Billy Duke with the Polk County Sheriff's Office testified that he came into contact with Ricky Freeman and Norma Felipe during a traffic stop. Officer Duke found that Freeman and Felipe had methamphetamine on their persons and Officer Duke asked them where they got the methamphetamine. According to Duke, Freeman and Felipe provided information to him about from whom and where they obtained the drugs. Officer Duke testified that he and several officers from the Corrigan Police Department went to 918 South Holmes Street in Corrigan based on information Freeman and Felipe had provided Officer Duke. Officer Duke testified that Freeman and Felipe informed him that the building's occupants had a large cache of narcotics and an AK-47, and because Officer Duke had unverified information that the building's occupants could possibly be involved with the cartel, the officers approached the building with weapons drawn and "in a tactical manner just in case." According to Officer Duke, as they approached the building, Calderon looked out of the window and saw the officers, law enforcement announced themselves in English and Spanish, and the officers ordered the occupants to exit the building, but no one complied. Officer Duke testified that exigent circumstances existed—that law enforcement had credible information about weapons and drugs in the building and the officers heard noises indicating the occupants were either

getting a weapon ready or disposing of the drugs—and that it necessitated that they secure the scene and enter the building without a warrant. Officer Duke testified that he kicked in the door, grabbed Calderon, and pulled him out. A video recording of law enforcement's approach and entry into the building was admitted into evidence and played for the jury. Officer Duke testified that Calderon dropped a knife and that the officers then placed co-defendant Suri Contreras and Calderon in handcuffs. According to Officer Duke, law enforcement checked the building to make sure no others were hiding inside, they saw that the shower was ripped away from the wall and a hole was in the floor, and they saw in plain view a torch lighter commonly used to ingest or smoke methamphetamine. Duke testified that a search warrant was then obtained. A copy of the search warrant was admitted into evidence over defense counsel's objection. Duke reviewed certain photographs admitted into evidence and identified the following items confiscated after law enforcement obtained the search warrant: a knife, a broken meth pipe, a meth scale, an AR-15, a collapsible baton, a hat, and "a large quantity of methamphetamine" found inside the hat and under the building.

Officer Javier Segura with the Polk County Sheriff's Office testified that Officer Duke relayed information he had received from the traffic stop, and as a result, Segura went to a location in Polk County. According to Officer Segura, he

had reason to believe that there were dangerous people, methamphetamine, and an AK-47 in a building on the property. Segura testified that he and about four other law enforcement officers arrived at the property without a search warrant. Officer Segura testified that when they arrived at the location, the officers exited their vehicles, unholstered their weapons, one of the officers from Corrigan knocked on the door, and the officers announced themselves as "sheriff's office[,]. . . police[,] and . . . policia." According to Officer Segura, he saw Calderon open the curtain on the door and the officers ordered Calderon to open the door and for the occupants to come out. Officer Segura testified that he could hear what he thought was "somebody running inside, heard a lot of noise, just running back and forth in that little small area[,]" and it sounded like "[s]omething was being torn apart[.]" Officer Segura explained that when he heard the noise he was concerned because he did not know if the occupants were getting weapons or destroying evidence. Officer Segura testified that, after no one opened the door, the officers forced their way into the building, and Officer Segura forced Calderon to the ground and placed him in handcuffs. According to Officer Segura, the other officers went in the other rooms of the building for their safety to make sure it was clear, and after a search warrant was obtained and the premises were searched, methamphetamine was found. Officer Segura testified that he assisted in searching the building and retrieving some of the

4

evidence, but that he did not file a report in the case and was not the arresting officer. According to Officer Segura, Contreras and Calderon were charged with possession with intent to deliver methamphetamine. On cross-examination, Officer Segura testified that at the time he took Calderon into custody, he never saw Calderon in possession of a weapon or in possession of any drugs.

Kai Allen, a chemist for the Texas Department of Public Safety (DPS) crime lab, testified that he tested the substances seized in the case using procedures followed by the Texas DPS in weighing and testing a substance. Allen confirmed that the substance admitted as State's Exhibit 20 amounted to 19.03 grams of methamphetamine.

Ricky Freeman testified that at the time of trial he was incarcerated for "[m]anufacture and delivery, two counts, . . . possession of a firearm and bail jumping." According to Freeman, he first spoke to State's counsel about Freeman testifying against Calderon or Contreras when he met with State's counsel and a detective with the sheriff's department two days prior to his testimony, and after he had pleaded guilty to the charges of possession and delivery and manufacture of methamphetamine. Freeman testified that he asked State's counsel to help him serve his sentence at the Polk County jail instead of going to the Texas Department of Corrections, that State's counsel explained he could not give Freeman anything and

5

nothing was guaranteed, but State's counsel told Freeman that he would talk to the sheriff's office and write a letter to the Board of Pardons and Paroles about Freeman's truthful testimony. Freeman testified that he was testifying of his own free will and that he would testify truthfully even despite his conversations with State's counsel.

According to Freeman, he was arrested for possession with intent to deliver methamphetamine on May 4, 2016, and he informed a deputy that he had obtained the methamphetamine from people using his girlfriend's, or her family's, property at 918 Holmes Street in Corrigan, Texas. Freeman testified that he had obtained drugs from Contreras on prior occasions, that Freeman sold the drugs and gave Contreras a percentage of the proceeds, and Freeman also kept some of the money. According to Freeman, on May 4, 2016, prior to his arrest, he went to the address in Corrigan and Contreras handed him drugs to sell. On cross-examination, Freeman testified that Calderon was inside the building with Freeman and Contreras and Calderon smoked methamphetamine with them, but he agreed that Calderon did not give Freeman any drugs and he had never met Calderon prior to May 4, 2016.

Christie Allen, a detective with the Polk County Sheriff's Office, testified that she assisted State's counsel in interviewing Freeman just days prior to trial. Detective Allen's recollection of what Freeman reported during the interview was

that "[t]here was a main man that came from Houston that brought . . . a lot of different kinds of drugs, and he gave them to the first guy that was there, and then he gave them to the defendant." Detective Allen testified that she understood Freeman to say that both people in the building on the night of May 4 had contact with the drugs given to Freeman.

Virginia Calderon, the defendant's sister, testified that she saw the defendant on May 4, 2016, and that she did not see him in possession of drugs. Andres Rodriguez, the defendant's brother-in-law, testified that he could not recall if he had contact with the defendant on that date, and Vernice Calderon, the defendant's sister, testified that she did not have contact with the defendant on the date in question.

The jury found Calderon guilty of possession with intent to deliver a controlled substance, methamphetamine, as alleged in the indictment. Calderon elected for the jury to assess punishment. At the punishment hearing, Virginia Calderon testified that she has had a lot of contact with Calderon over the years and has never known him to deal drugs and never has seen him using drugs. She testified that Calderon was not a U.S. citizen and she did not know if Calderon had a criminal history in the United States or in Mexico. When asked by defense counsel if the jury elected to give her brother community supervision did she think her brother would

7

conduct himself in a manner to complete that community supervision, Virginia responded "Yes, sir."

Andres Rodriguez testified during the punishment phase that he had known Calderon for ten years and he has been Calderon's work supervisor for about three years. Rodriguez testified he had never seen Calderon using or selling drugs. When asked by defense counsel if Rodriguez believed that if the jury gave Calderon probation would Calderon be responsible while on probation, Rodriguez answered "Yes, sir."

After all the evidence had been presented, prior to closing arguments, and outside of the hearing of the jury, counsel for the State noted on the record that defense counsel did not file an application for probation. Defense counsel acknowledged that he did not know he needed to file an affidavit by Calderon swearing that he had never been convicted of a felony. State's counsel noted on the record that the State would accept the filing of the affidavit prior to deliberations. Defense counsel handwrote an affidavit but then informed the trial court that the affidavit could not be filed truthfully. Calderon testified that he understood that by not signing and filing the affidavit he is no longer eligible for probation and would be sentenced to time in the Texas Department of Criminal Justice, that he understood if he signed an untrue affidavit that he would face perjury charges, and he did not

want to sign the affidavit. The jury assessed punishment at twenty-two years in prison and assessed a $10,000 fine. Calderon appealed.

Appellate Issues

In his first two issues, Calderon argues he was denied his Sixth Amendment right to effective assistance of counsel during both the guilt-innocence and sentencing phases of trial. In his third issue, Calderon contends that the trial court committed reversible error by failing to include an accomplice-witness instruction in the jury charge in the guilt-innocence phase of trial. In his fourth issue, Calderon asserts that the State's final argument in the guilt-innocence phase of trial was improper and deprived him of a fair and impartial trial. Because our resolution of issues three and four affect our analysis in issues one and two, we address issues three and four first.

Accomplice-Witness Instruction

In issue three, Calderon argues that the trial court committed reversible error by failing to include an accomplice-witness instruction in the jury charge in the guilt-innocence phase of trial. According to Calderon, testimony at trial showed that "Freeman was participating with Appellant and Contreras before and during the commission of the crime, that he was engaged in an ongoing conspiracy to possess and deliver methamphetamine with both Contreras and Appellant, and therefore, was

9

an accomplice witness as a matter of law." Calderon argues he suffered egregious harm because of the absence of the accomplice-witness instruction.

We review a claim of jury charge error using a two-step analysis. *Serrano v. State*, 464 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). We first determine whether there is error in the jury charge, and if we find error in the charge, we next determine whether sufficient harm was caused by that error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm necessary for reversal depends upon whether the error was preserved in the trial court. *Ngo*, 175 S.W.3d at 743. If error was not preserved, then reversal is required only upon a showing of "egregious harm." *Id.* at 743-44.

Egregious harm is a "high and difficult standard" to satisfy. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "'Jury-charge error is egregiously harmful it if affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.'" *State v. Ambrose*, 487 S.W.3d 587, 597 (Tex. Crim. App. 2016) (quoting *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016)). The Court of Criminal Appeals has instructed that, in conducting an egregious-harm analysis, we must consider (1) the entirety of the jury charge, (2) the

state of the evidence, (3) counsel's arguments, and (4) any other relevant information revealed by the entire trial record. *Id.* at 598. We must "review the relevant portions of the entire record to determine whether [a defendant] suffered actual harm, as opposed to theoretical harm, as a result of the error." *Id.* (citing *Marshall*, 479 S.W.3d at 843).

Under article 38.14 of the Code of Criminal Procedure, a criminal conviction may not be based on the testimony of an accomplice witness unless the testimony is "corroborated by other evidence tending to connect the defendant with the offense committed[.]" Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005). If the evidence at trial raises a question of fact as to whether a witness is an accomplice, the trial court must instruct the jury to decide whether the witness is an accomplice; if the evidence conclusively establishes that a witness is an accomplice, the trial court must instruct the jury that the witness is an accomplice as a matter of law. *Druery v. State*, 225 S.W.3d 491, 498-99 (Tex. Crim. App. 2007). We review a trial court's determination of whether the evidence supports an accomplice-witness instruction under an abuse of discretion standard. *See Paredes v. State*, 129 S.W.3d 530, 538 (Tex. Crim. App. 2004). A witness is an accomplice witness only if he participates in the crime with the defendant, taking an affirmative act to assist in the commission of the crime before, during, or after the commission of the crime, with the required

11

culpable mental state for the crime. *Druery*, 225 S.W.3d at 498-99; *see also Paredes*, 129 S.W.3d at 536. Mere presence at the scene of the crime does not render a witness an accomplice. *Druery*, 225 S.W.3d at 498; *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006).

Here, although Freeman testified he pleaded guilty to possession with intent to deliver methamphetamine, he was not a co-defendant in this case, and the record does not show that the methamphetamine he possessed during the traffic stop was not the same methamphetamine the officers found at the building for which Calderon was arrested. Assuming without deciding the trial court erred in omitting an accomplice-witness instruction, Calderon failed to make this objection to the charge and therefore we must apply the "egregious harm" standard. *See Ngo*, 175 S.W.3d at 743-44.

"Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Ambrose*, 487 S.W.3d at 598. "In assessing the strength of the non-accomplice evidence, we examine (1) its reliability or believability, and (2) the strength of its tendency to connect the defendant to the crime." *Id.* We must examine the non-accomplice evidence for

corroboration "tending to connect" appellant to the commission of the offense. *See id.* (citing *Casanova v. State*, 383 S.W.3d 530, 539 (Tex. Crim. App. 2012)). The corroborating evidence need not be sufficient, standing alone, to prove the offense beyond a reasonable doubt—there "need be only some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime." *Id.* (quoting *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007)).

Here, non-accomplice corroborating evidence was admitted connecting Appellant to the offense. Officer Duke and Officer Segura testified that as they approached the building, Calderon looked out of the window and refused to exit the building in response to law enforcement's knock and announcements. Officer Duke testified that he heard noise indicating the occupants were either getting a weapon ready or disposing of drugs. Officer Segura testified that it sounded like "[s]omething was being torn apart[.]" According to Officer Duke, Calderon dropped a knife when law enforcement entered the building. Officer Duke and Officer Segura testified that methamphetamines were found in a hole in the floor of the building after a search pursuant to a search warrant. Officer Duke testified that Calderon and Contreras were the only occupants in the building, and Officer Segura testified that Calderon and Contreras were charged with possession with intent to deliver

13

methamphetamine. Kai Allen, the DPS chemist, testified that the substance turned over in the case amounted to 19.03 grams of methamphetamine.

The record demonstrates that some non-accomplice evidence tended to connect Appellant to the drugs and the offense, and the totality of the record fails to show that Appellant was egregiously harmed by the omission of an accomplice-witness instruction. *See Ambrose*, 487 S.W.3d at 598-99. We overrule issue three.

## Claim of Improper Jury Argument

In his fourth issue, Calderon contends that, because the State did not have probable cause to search the building occupied by Calderon when the officers approached the building in the middle of the night with guns drawn and demanding the occupants to come out of the building, the State improperly argued during final argument that the officers had the right to surround the building, with their guns drawn, and demand that Appellant come out. The trial court denied the motion to suppress and Calderon does not challenge that ruling on appeal. "Proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement." *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). A prosecutor is permitted to draw from all the facts in

14

evidence to make reasonable, fair, and legitimate inferences. *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990).[1]

Officer Duke testified that exigent circumstances existed—that law enforcement had credible information about weapons and drugs in the building and the officers heard noises indicating the occupants were either getting the weapon ready or disposing of the drugs—and that it necessitated that they secure the scene and enter the building without a warrant. According to Officer Segura, he had reason to believe there was methamphetamine at that location and reason to believe that there were dangerous people, methamphetamine, and an AK-47 in a building on the property. Officer Segura explained that he heard the noise in the building and was concerned because he did not know if the occupants were getting weapons or destroying evidence. We conclude the State's argument was supported by or reasonably based on the evidence. We overrule issue four.

---

[1] We note that in *Contreras v. State*, No. 09-17-00029-CR, 2018 Tex. App. LEXIS 2389, at *9 (Tex. App.—Beaumont Apr. 4, 2018, no pet.) (mem. op.) (not designated for publication), this Court affirmed the trial court's judgment convicting Suri Sadi Contreras of the same offense as Calderon. With respect to the trial court's pretrial ruling denying the motion to suppress filed by Contreras, we concluded in *Contreras* that "the trial court could have reasonably determined that the entry into the building was based upon probable cause and exigent circumstances." *Id.* at *18.

Ineffective Assistance of Counsel

In his first two issues, Calderon argues he was denied his Sixth Amendment right to effective assistance of counsel during the guilt-innocence and sentencing phases of trial. In issue one, Calderon argues his counsel was ineffective during the guilt-innocence phase of the trial and outlines nine areas or instances of counsel's ineffectiveness. In issue two, Calderon argues that his counsel was ineffective during the punishment phase of the trial because his counsel did not know before trial whether Calderon had a criminal record and that his counsel was unaware that he had to file a motion for probation before trial began.

A defendant has a Sixth Amendment right to the effective assistance of counsel. U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To establish that he received ineffective assistance of counsel, Calderon must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687-88, 694. The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A party asserting an ineffective-assistance claim must overcome the "strong presumption that counsel's conduct fell within the

wide range of reasonable professional assistance." *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 689). An appellant's failure to make either of the required showings of deficient performance or sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The right to effective assistance of counsel ensures the right to "reasonably effective assistance[,]" and it does not require that counsel must be perfect or that the representation must be errorless. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). The appropriate context is the totality of the representation; counsel is not to be judged on isolated portions of his representation. *See Thompson*, 9 S.W.3d at 813; *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990). Isolated failures to object to improper evidence or argument ordinarily do not constitute ineffective assistance of counsel. *See Ingham*, 679 S.W.2d at 509; *Ewing v. State*, 549 S.W.2d 392, 395 (Tex. Crim. App. 1977). To meet his burden regarding his claim that his counsel was ineffective for failing to object to evidence, Appellant must also establish that the trial court would have committed error in overruling such

17

objection had an objection been made. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

Ordinarily, on direct appeal, the record will not have been sufficiently developed during the trial regarding trial counsel's alleged errors to demonstrate in the appeal that trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

Trial counsel's actions regarding search issues[2]

Calderon argues that during the guilt-innocence phase his counsel was ineffective because he failed to challenge deficiencies in the search warrant and accompanying affidavit. According to Calderon, his trial counsel failed to challenge the "false statement" in the search warrant regarding who controlled the buildings on the property. Calderon also argues that his trial counsel failed to challenge Officer Duke's conclusory statements in the search warrant affidavit on the bases that the affidavit lacked information showing: (1) Duke had training and experience with methamphetamine; (2) Freeman and Felipe had previous experience with methamphetamine; (3) Freeman and Felipe were reliable informants; and (4) the information was received by the officer recently and that the informants had seen

---

[2] For convenience, we categorize the nine alleged areas or instances of ineffectiveness with similar subheadings as those used by Appellant, and we address some of the alleged areas or instances of ineffectiveness together.

18

the narcotics at the location recently. In addition, Calderon argues that his trial counsel failed to challenge the information in the affidavit regarding the scale and torch lighter, as those items were "illegally obtained evidence" due to the officer's entry into the building in violation of Calderon's Fourth Amendment rights.

Calderon's counsel filed a written motion to suppress evidence, arguing, in part, that the search warrant violated the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10, and 19 of the Texas Constitution, and Article 38.23 of the Texas Code of Criminal Procedure because:

a. The affidavit upon which the search warrant was based was improperly and illegally executed.

b. The warrant was illegally issued for the reason that the supporting affidavit does not reflect sufficient probable cause to justify issuance of a search warrant, in that: (i) the affidavit lacks sufficient underlying circumstances which would permit the conclusion that the alleged contraband was at the location in which it was claimed; and (ii) the affidavit fatally fails to state sufficient underlying circumstances to establish the credibility of the affiant.

c. The warrant was illegally issued because the affidavit did not show probable cause sufficient to justify the issuance of the search warrant, because the magistrate who issued the search warrant did not have a substantial basis for concluding that probable cause existed, i.e., that the alleged contraband would be found in a particular place, and thus did not meet the totality of the circumstances analysis adopted in *Illinois v. Gates*, 103 S.Ct. 2317[] (1983).

19

After a hearing, the trial court denied the motion. Even if we presume defense counsel erred, Calderon failed to demonstrate a reasonable probability that, but for counsel's alleged error, the outcome of his trial would have been different. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

### Trial counsel and the co-defendant, Suri Contreras

Calderon argues that during the guilt-innocence phase his counsel was ineffective because he failed to subpoena co-defendant Contreras or talk to him or his attorneys. Appellant did not establish in the trial court or on appeal that subpoenaing Contreras or talking to him or his attorneys would have yielded favorable information or testimony for Appellant. *See Holland v. State*, 761 S.W.2d 307, 319 (Tex. Crim. App. 1988) (defendant attempting to show trial counsel's performance fell below objective standard of reasonableness because counsel failed to subpoena a witness to testify must show that the witness was available to testify and would have provided testimony beneficial to the defendant); *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (finding that a claim for ineffective assistance based on trial counsel's failure to interview a witness cannot succeed absent a showing of what the interview would have revealed that could have changed the result of the case). Calderon has failed to demonstrate

that trial counsel, in failing to subpoena or talk to Contreras or his attorneys, acted below the standard. *See Strickland*, 466 U.S. at 688-89.

Testimony that Appellant was a member of a cartel

Calderon argues that during the guilt-innocence phase his counsel was ineffective because he failed to request a hearing or obtain an order on counsel's motion in limine requesting that there be no mention of "drug cartels" and failed to object to hearsay testimony that Calderon was a cartel member. Calderon's counsel prior to trial asked State's counsel outside of the jury's hearing whether the State intended to refer to a drug cartel in the State's case-in-chief and the State responded that the officer had information suggesting that Calderon might be a cartel member, and that the information was relevant to law enforcement's decision to approach the building in the manner they did. The State said it would approach the bench prior to initiating the line of questioning that would elicit testimony relating to drug cartels.

It is possible that Calderon's trial counsel decided to withhold additional objections to prevent the impression that he was objecting at every opportunity or to avoid drawing unwanted attention to any alleged cartel affiliation. *See Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Faced with a silent record on direct appeal, we conclude Appellant has failed to rebut the strong presumption that his trial counsel's conduct was reasonable. *See Thompson,*

9 S.W.3d at 813. Nor has Appellant established his trial counsel's failure to object was so outrageous that no competent attorney would have made the same decision. *See Menefield*, 363 S.W.3d at 593.

Complaints regarding failure to object to leading questions, hearsay, bolstering, speculation and opening the door to hearsay; Testimony of Christie Allen; State's Exhibit 1 - the video recording of the initial warrantless entry; and Trial counsel's attempt to introduce positive character evidence

Calderon argues that trial counsel assisted the State in presenting its case by repeatedly failing to object to hearsay about Freeman and Felipe telling the officers that there was an AK-47 in the building and that the occupants were dangerous, failing to object to leading and bolstering questions when the State called Freeman to testify, failing to object to the line of questioning when the State was attempting to show that Calderon would have known Contreras was trying to hide drugs, and opening the door to damaging hearsay evidence from Officer Duke. Calderon also argues that his counsel failed to obtain an order granting his Motion for Witness List, failed to attempt to prove the State acted in bad faith in not giving him notice that witness Christie Allen would possibly be a witness, failed to object to Allen's non-responsiveness and improper impeachment, and failed to request the court to instruct the jury at trial and in the charge that Allen's testimony was offered for the purpose of impeaching Freeman's testimony. Calderon further asserts his counsel failed to object to State's Exhibit 1, the video recording of the entry, on the bases that it was

a fruit of the illegal warrantless entry and that the audio portion was hearsay. Calderon also argues that had his counsel learned of Calderon's criminal history, counsel would not have attempted to introduce favorable character evidence or may have determined that Calderon should plead guilty.

"'If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal.'" *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003) (quoting *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002)). Since there is no evidence of counsel's reasons for these specific actions or inactions, we must defer to counsel's decision if there is at least the possibility that the conduct could have been legitimate trial strategy. This Court should not consider the wisdom of such strategy because ineffective assistance of counsel claims cannot be "built on retrospective speculation[.]" *Bone*, 77 S.W.3d at 835. Furthermore, Calderon has not demonstrated that the errors together created a reasonable probability that, but for the errors, Calderon would not have been convicted. *See id.* at 833.

Complaint regarding accomplice witness charge as to witness Ricky Freeman

Calderon argues that during the guilt-innocence phase his counsel was ineffective because he failed to request an accomplice-witness instruction regarding

23

the witness Ricky Freeman. We have already overruled Calderon's issue regarding the failure to include an accomplice-witness instruction and it cannot be ineffective assistance of counsel when the trial court would not have erred by refusing such a request. *See Vaughn*, 931 S.W.2d at 566 (to successfully present an argument that counsel was ineffective because of a failure to object to State's questioning and argument, appellant must show that the trial court would have committed error in overruling such objection). Furthermore, even if we presume defense counsel erred, Calderon failed to demonstrate a reasonable probability that, but for counsel's alleged error, the outcome of his trial would have been different. *See Bone*, 77 S.W.3d at 833.

Trial counsel's failure to object to the State's final argument

Calderon argues that trial counsel's failure to object to the State's improper final argument that the officers had the right to surround the building with their guns drawn and demand Calderon to come out constituted ineffective assistance of counsel. As stated above, Calderon has not demonstrated that the State's final jury argument was improper. Furthermore, Calderon has not established that during the guilt-innocence phase his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's

24

error(s), the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687-88. We overrule issue one.

Allegations of Ineffective Assistance During Punishment Phase

Calderon also argues that his counsel was ineffective during the punishment phase of the trial because his trial counsel did not know prior to trial whether Calderon had a criminal record, his trial counsel was unaware that he had to file a motion for probation prior to trial, and that his trial counsel elicited testimony that Calderon was not a United States citizen. We note that the record demonstrates that Calderon could not truthfully file an affidavit stating facts sufficient to show he was a candidate for probation. Under the second prong of the *Strickland* test, Calderon must show a "reasonable probability" that, but for the error, the result would have been different. *See Bone*, 77 S.W.3d at 833. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Thompson*, 9 S.W.3d at 812. Even assuming counsel's lack of knowledge regarding Calderon's criminal record or counsel's eliciting of testimony that Calderon was not a United States citizen was error, Calderon has not demonstrated that the probability of a different result is sufficient to undermine confidence in the outcome. *See id.* We overrule issue two.

We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on June 27, 2018
Opinion Delivered October 24, 2018
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.